Patrick McMahon, Respondent, *v.* The Second Avenue Railroad Company, Appellant.

An obligation to keep a street in repair requires that it shall be kept in such condition as that the ordinary and expected travel of the locality may pass with reasonable ease and safety.

Where an occasion arises for repair which is of such a nature as warrants delay in making it, the duty to keep in repair carries with it the duty to guard the public against harm from the delay.

Where one contracts with a municipality to perform in its stead the duty resting upon it of keeping its streets in repair and safe for the passage of the public, and where because of neglect to perform the duty a cause of action arises against the municipality, the action may be brought by the party injured directly against the contractor.

Defendant contracted with the city of New York to pave the streets whereon its tracks were laid, "in and about the rails," and to "keep the same in repair." Under a license from the city, one R., who owned a lot adjoining the street, dug a trench across a portion of the street and under defendant's tracks to connect his lot with a sewer in the street. Defendant laid down planks or joists to bridge the excavation. Plaintiff was driving a truck along the street and across this bridge when the planks, not being properly fastened, slipped, and one wheel of the truck, at a point about one foot outside the rails of defendant's track, went into the excavation throwing plaintiff from his truck and injuring him. In an action to recover damages, *held*, that the defendant was bound under its contract to keep the streets "in and about" its rails safe for the passage of the public, and for a failure to perform that duty was liable to the party injured; that the fact that R. had a license from the city to make the trench did not absolve defendant from its obligation to protect the public, that the words "in and about" included so much of the street surface outside the rails as was disturbed in laying the track, and in the

absence of evidence as to how far that space extended, it was a reasonable presumption that it included as much as one foot outside the rails; and that, therefore, defendant was liable under the contract.

Also, *held*, that conceding defendant was not bound to repair, it had the right so to do to make the street passable for its own vehicles, and having volunteered to make the passage safe over the excavation, and in attempting so to do, having left the place in reality insecure, while giving it the appearance of safety which was delusive and misleading, it was liable.

(Argued June 19, 1878; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 11 Hun, 347.)

This action was brought to recover damages for injuries alleged to have been sustained through defendant's negligence.

The facts were substantially as follows :

On the 4th of February, 1876, plaintiff was driving a truck up Second avenue, in New York city, upon the up or right hand track of defendant's railroad, the right or off wheels of the wagon running in the groove of the eastern rail, and the left hand wheels running outside of the left hand rail of the up-track, between the up-track and the down-track, which, at this point, were about seven feet apart.

As he approached Seventy-eighth street, there being no intimation of danger, the left hand wheels of the truck broke through a covering or bridge of planks and beams, which had been built by defendants over a trench running under the street, and which was concealed at the time by a covering of snow ; plaintiff was thrown from the truck to the ground and sustained the injuries complained of.

It appeared that one Riss, under a permit from the city authorities, had made this excavation for the purpose of connecting his house with the sewer. He had notified defendant, in advance, that he was going to dig under its tracks ; whereupon the railroad company took up the street pave-

ment for six or seven feet on each side of the trench from the space between its tracks, and laid down planks or joints, which were about twenty feet long and from three to five or six inches thick. The point at which the truck broke through this covering or bridge was about one foot from the westerly rail of the up-track, and the edges of the joists or planks were split off as the wheels went down between them. Plaintiff offered in evidence a contract between defendant and the city of New York by which it was agreed that defendant " should pave the streets in and about the rails in a permanent manner, and keep the same in repair, to the entire satisfaction of the street commissioner." The contract was objected to by defendant's counsel. objection overruled and exception taken.

Further facts appear in the opinion.

*Austen G. Fox*, for appellant. Defendant was not liable unless some negligence was shown on its part which contributed to the accident. (*Unger* v. *Forty-second St., etc., R. R. Co.*, 51 N. Y., 497; *Parrott* v. *Wells*, 15 Wall., 524, 537; *Livingston* v. *Adams*, 8 Cow., 175; *Losee* v. *Buchanan*, 51 N. Y., 476; *Baulec* v. *N. Y. and H. R. R. Co.*, 59 id., 356, 365, 366; *Cleveland* v. *N. J. Steamboat Co.*, 68 id., 306, 310; *Welfare* v. *London and Brighton R. R. Co.*, L. R., 4 Q. B., 693; *Touitellot* v. *Rosebrook*, 11 Met., 460; *Cotton* v. *Wood*, 8 C. B. [N. S.], 568; *Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y., 9; *Lamb* v. *Camden Amboy R. R. and S. Co.*, 46 id., 271, 279; *Terry* v. *N. Y. C. R. R. Co.*, 22 Barb., 574, 586; *Metropolitan R'y. Co.* v. *Jackson*, 3 App. Cas., 193, 200 [Des.], 877; *Bridges* v. *North London R. Co.*, L. R., 7 H. L., 213.) Defendant was not bound to cover the excavation or support the surface of the street where the pavement had been undermined by workmen under the authority of the city government. (*Brooklyn* v. *Brooklyn R. R. Co.*, 47 N. Y., 475, 483; *Lowell* v. *Spaulding*, 4 Cush., 277; *Young* v. *Yarmouth*, 9 Gray, 386, 390; *Payne* v. *Rogers*, 2 H. Bl., 350.)

*Frederic A. Ward*, for respondent. Defendant was bound under its agreement to keep the streets in and about its rails in repair. (*City of Brooklyn* v. *Brooklyn City R. R. Co.*, 47 N. Y., 480.) Having absolute and exclusive control of that portion of the street it was liable for injuries sustained by plaintiff through its neglect to discharge its obligations under the contract. (*Conrad* v. *Ithaca*, 16 N. Y., 159, 171; *Conroy* v. *Gale*, 5 Lans., 344, 348; aff., 47 N. Y., 655; *Masterton* v. *Village Mt. Vernon*, 58 id., 394; *Hicks* v. *Dorn*, 42 id., 53; *French* v. *Donaldson*, 57 id., 496, 500; *Davis* v. *Lamoile Plank Road*, 27 Vt., 602; *Penn. and Ohio Canal Co.* v. *Graham*, 63 Penn., 295; *City of Brooklyn* v. *Brooklyn City R. R. Co.*, 47 N. Y., 480; *Yale* v. *Hampden Turnpike Co.*, 18 Pick., 359; *Wendell* v. *Mayor Long*, 4 Abb. Ct. of App. Cases, 563, 574; *Mayor of Baltimore* v. *Pennington*, 15 Md., 12; *Robinson* v. *Chamberlain*, 34 N. Y., 389.) Defendant's liability to keep the street in repair was not confined to ordinary and gradual wear and decay, but extended to injuries by the elements, accidents and acts of a third person. (*Beach* v. *Crain*, 2 N. Y., 95; Taylor on Landlord and Tenant [6th ed.], §§ 364, 360; *McIntosh* v. *Lown*, 49 Barb., 550; *Phillips* v. *Stevens*, 16 Mass., 238; Platt on Covenants, 275; *Meyrs* v. *Burns*, 33 Barb., 405; *Cook* v. *Champlain Trans. Co.*, 1 Den., 104; *Brecknock Nav. Co.* v. *Pritchard*, 6 Term. Rep., 751; *Ballock* v. *Domonitt*, 6 id., 650; *Leavitt* v. *Fletcher*, 10 Allen, 121; *Yeabrook*, 40 Edw., 111–116; *Mayor* v. *These Defendants*, 32 N. Y., 261–271–273; *Hover* v. *Barkoof*, 44 id., 113, 126; *McCarthy* v. *Syracuse*, 46 id., 194, 197 ) The grant of the permit was a breach of the contract or waiver of the covenant by the city, but the discharge of a duty which did not relieve defendant from liability. (*Wendell* v. *Mayor, etc.*, 4 Keyes, 266, 270.) If there had been no agreement with the city defendant would have been liable on the facts proved. (*Drew* v. *N. R. Co.*, 6 Carr. & P., 754; *Manley* v. *St. H. C. and R. Co.*, id., 852, 855; *Lewenthal* v. *Mayor, etc.*, 61 Barb., 511; *Hines* v. *City*

of *Lockport,* 50 N. Y., 236; 1 Roll. Abr., 368; *Rex* v. *N. R. of Yorkshire,* 5 Burr., 2,594.)

Folger, J. There is no doubt but that the cause of the injury to the plaintiff was the making of the excavation in the street, and neglecting to so cover it as that loaded vehicles could pass over it in safety ; or in neglecting to warn and turn away loaded vehicles from attempting passage there while it was insufficiently covered. There is no claim or pretence that the negligence of the plaintiff contributed to the injury.

In this state of facts, it may be that the municipality, having authorized the excavation and having notice that it was going on, and Riss, the person who actually made and left it, were each liable to the plaintiff for the injury suffered. It is not needed that we pass upon that. The question now is, does anything appear in the record which makes the defendant liable to the plaintiff? A liability may arise in two ways : First, from the defendant's having contracted with the municipality to do, in stead of it, the duty which was upon it, to keep the street safe for the passage of the public ; and by neglect to do that duty, having given cause of action against the municipality for neglect ; then action will be directly against the defendant therefor, instead of first against the municipality, so as to avoid circuity of action ; (*City of Brooklyn* v. *Brooklyn City R. R.,* 47 N. Y., 475) ; and Second, from the defendant's voluntarily interfering and undertaking to make the way safe, and so inefficiently doing it as to leave it unsafe, and, at the same time, so as to permit and tempt passage over it.

For the purpose of showing the first named of these grounds of liability, a contract was put in evidence, between the defendant and the municipality, by which the defendant agreed to keep the streets in and about the rails in repair. The phrase in the contract is this : " Shall pave the street in and about the rails in a permanent manner, and keep the same in repair ; " and we think that " the same " which is to be kept in repair is " the streets." It is plain that the street was not in repair at the

place where the wheels of the plaintiff's truck went down. The phrase "keep in repair" is to be construed with reference to the object to which it has been applied. To keep a street in repair is to have it in such state as that the ordinary and expected travel of the locality may pass with reasonable ease and safety. A street in a city is not kept in repair, if it is founderous, or has in it a trench, into which carriages may go and harm follow. The duty to keep in repair is to be performed at once, on the arising of the occasion for repair, or the doing of it put off for a reasonable time, if the nature of the occasion warrants delay. In the latter case, the duty to keep in repair carries with it the duty to guard the public against harm from the repair being delayed. This may be done by placing barriers by day, and barriers and lights by night, about the defective place; or some temporary expedient, sufficient for the time, may be used, such as a bridge over the opening or founderous place. Neither of these things were effectually done by the defendant. Was it under the duty to do one or the other of them? We think that it was. (*Beach* v. *Crain*, 2 N. Y., 86.) We have seen that it was under the duty to keep the street in repair, but not the whole of the street. Only that part "*in and about*" the rail. Clearly all the space within the defendant's rails fell within its agreement. Now the defective place in the street was within the two outside rails of the defendant's tracks. But we need not put so wide a construction as that upon the agreement. "In and about" the rails means, at least, within the two rails of each track and some space outside of each rail. Beyond doubt, it means so far outside as the street surface was disturbed in the act of laying the track. No evidence was given how far such space extended, so that requirement cannot be applied here with exactness. In the absence of such evidence, the word must have a reasonable interpretation, and be let to cover so much ground as it would be fair to consider would be used by the defendant, from time to time, for its purposes of repair to the tracks, and the like. The proof was that the off-wheels of

the truck of the plaintiff were in the groove of one rail, and that the near-wheels were outside the other rail about one foot. Now, a space of twelve inches from the outside of each rail is not too great to be taken as the extent to which the defendant used the street, outside each rail, in laying their track, and, from time to time, in repairing it. It is not an unjust or strained interpretation that "about the rails" includes as much of the street as one foot outside of them.

Nor do we think that the fact that Riss was the licensee of the city to make the trench absolved the defendant from liability to protect the public. The contract with the city was made in view of all the customary uses to which the streets and their appendages are put, from time to time. That contract put the defendant in the place of the city, to repair the streets after such use, if they then needed repair, and to guard against harm while they necessarily remained out of repair. Now, one of the appendages of this street was the main sewer through it ; and one of the customary uses of the street was to make and enjoy side drains into that main sewer. Almost as necessary to a property owner on the street, is a use of the main sewer, as is a use of the street ; and almost as frequent and continuous. And the contract contemplated that use ; and the means customary to avail thereof. And for repair of damage to the street, arising therefrom, the defendant undertook with the city. It will not be denied that the defendant is bound to keep in repair from the use of the street with teams and vehicles ; nor but that, although the city is also bound to do the same, the defendant is liable to one harmed by a neglect to repair. It is just as much bound to repair, or protect from want of repair, when the need of repair arises from a lawful, customary, anticipated and probable use of the street, though not as frequent, nor by such multitude of people.

There was then the duty upon the defendant, to the public and to this plaintiff, to keep the street in repair, just at the place where his wheels went down, or to warn away therefrom.

This duty was not efficiently performed. It was undertaken, and in such way as to lead the plaintiff to suppose that passage there was safe. Two planks, or joists, or timbers were put down, in size seven inches by five inches, with the seven inch side up. That made a width of fourteen inches. It is probable that the material was sufficient in strength to bear a heavy vehicle. The defect seems to have been in the infirmity of the fastening them in place; for the timbers did not break, but the wheels went between them, tearing off the edges of them; and it would seem that the outer one slid away from the inner one, under the weight of the truck, and that thus it was let down. The neglect was in not fastening the timber at first, or in not again fastening it, when the adjoining surface of the street had fallen into the trench. Thus it appears that the duty was upon the defendant to keep that place in the street in repair; and that there was enough in the evidence to warrant the jury in finding that there was negligence in performing it.

But the other ground of liability also exists. The defendant knew of the existence of the dangerous place. Grant that it was not bound to repair it; yet it had a right to make it passable for its own vehicles and teams. The exercise of this right carried with it a duty. In the exercise of it it was bound not to harm others or lead them to harm. The defendant volunteered to make passage safe over the excavation. In attempting so to do, it gave · the place the appearance of safety, while, as the event proves, it was really insecure, delusive and misleading. It would have been better for the plaintiff had the defendant left the trench made by Riss altogether uncovered; for the open gap in the roadway would have been apparent to him, and he would have avoided it. By undertaking to make a safe way of passage, · and failing to entirely do so, and yet making the show of a safe way, the defendant misled the plaintiff to his harm, and must answer to him for his damage. They had a right to do what they did, had they done it well. It was necessary for the use by them of their own property. But having

begun, they were bound to do it in a proper manner for the public. (*Manley* v. *St. Helen's Canal Co.*, 2 H. & N., 840; *Drew* v. *New River Company*, 6 Carr. & Payne, 754.)

The defendant is, upon general principles and upon the facts of the case, liable to the plaintiff. It remains to be seen whether there were any errors in the conduct of the trial calling for a reversal of the judgment.

There was no error in admitting in evidence the agreement between the defendant and the municipality. That was material and proper, to show that there was undertaken by the defendant the duty which lay primarily upon the city to give the public, and the plaintiff, as one thereof, a safe passage through the thoroughfares. The reception of the agreement in evidence did not change the cause of action from one arising in tort to one based upon contract. It showed the duty of the defendant, and made applicable the other facts of the case, to show its negligence of duty, wherein it was tortious.

It follows from what we have said that it was no error not to charge that it was not the duty of the defendant to uphold the street against all excavation beyond its track and bridge, as actually built. It was its duty to uphold the street about, and that means beyond its rails. The evidence shows that the wheels of the plaintiff's truck went down, not beyond, but between two timbers of its bridge.

So it is with the refusal to charge the supposition, that if the defendant constructed and maintained a strong and safe bridge between its tracks, and about fourteen inches on each side of them, and the injury was occasioned by an excavation under and beyond such bridge, it was not liable. The court had already charged that the defendant was not liable for an excavation beyond the limits fixed by the contract, but it held, as matter of law, that the injurious excavation was within that limit. And we have agreed therein.

The point that there was error in submitting to the jury the question, whether the contract did not require the defendant to make the street secure for the whole space between its

two tracks, does not arise. The court made not that submission.

We need not further particularize. The points of the defendant, made on the argument here, are answered by the general considerations as here presented.

The judgment should be affirmed.

CHURCH, Ch. J., ANDREWS and MILLER, JJ. concur.

RAPALLO, EARL and HAND, JJ., dissent.

Judgment affirmed.