# THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, *v.* THE SECOND AVENUE RAILROAD COMPANY, Appellant.

*Agreement of street railroad company to keep the street "in and about the rails" in repair — construction of it — evidence — admissibility of memoranda made by a witness — neglect of a company to repair a street — when it cannot dispute the reasonableness of the sum expended by the city in repairing it.*

The defendant obtained permission from the common council of the city of New York to lay its tracks in certain of the streets therein, and agreed, among other things, that it would "pave the streets in and about the rails in a permanent manner, and keep the same in repair to the entire satisfaction of the street commissioner."

*Held,* that the defendant was required to keep in repair not only that portion of the streets immediately adjoining its rails, but so much thereof as was included between them, and, where it had laid double tracks, the spaces included between such tracks.

The defendant having neglected to repair the streets, when notified so to do by the street commissioner, the necessary repairs were made by the city and thereafter this action was brought to recover the amount it had expended in so doing. Upon the trial one Wilt, a foreman in the employ of the department of public works, testified that he had charge of the work; that he called in the morning and afternoon of each day and marked in a book the names and the time of the men employed and the quantities of new materials used. Two other witnesses testified that they were the foremen of the gangs employed in doing the work; that when Wilt came around they gave him the names of the men employed and the time they had worked, together with a statement of any new material used during his absence.

*Held,* that the entries so made by Wilt were properly received in evidence.

The defendant claimed that it was only liable for the reasonable value of the work performed and the materials furnished, and asked, as some evidence had been given to show that the work could have been done for less than was paid by the city, that this question should be left to the jury.

*Held,* that as the defendant had neglected to comply with the notice requiring it to do the work, and as it was not shown but that the city had had it done in the ordinary and usual manner, the defendant could not question the reasonableness of the amount expended by it.

Appeal from a judgment in favor of the plaintiff, entered upon a verdict rendered under the direction of the court.

*Austen G. Fox,* for the appellant.

*David J. Dean,* for the respondent.

BRADY, J.:

The defendants obtained permission from the common council to lay a grooved railroad track, with a double and single track, over parts of certain streets, and having obtained such permission, entered into an agreement with the mayor, aldermen and commonalty of the city of New York, which contained among other covenants the following : " That the said company shall pave the streets in and about the rails in a permanent manner, and keep the same in repair to the entire satisfaction of the street commissioner."

This action was brought to recover the expenses of making certain repairs in and about the rails of the defendants, rendered necessary by the neglect and refusal of the defendants to make them, and, as alleged, in violation of the covenant relating to that obligation. The complaint averred that the pavement in and about the rails laid by the defendants on the Second avenue, between Houston and Forty-second streets, in this city, pursuant to the authority and the resolutions of the common council, was in a bad condition, out of repair and unfit to be used, and that the commissioner of public works, on the 24th of March, 1877, on behalf of the plaintiffs, notified the defendants of the condition of the street named and requested them to properly repave or repair the street and pavement, and further notified the company that unless all the space in and about its railroad tracks on the Second avenue, from Houston street to Forty-second street, including the space in the center of and between the said defendants' double tracks, should be properly repaved and repaired to the satisfaction of the department of public works, within thirty days from that day, the department would proceed to do the work necessary for such paving, repavement and repairs, and that the defendants would be held responsible for the expense paid and incurred in and about the doing of such work. The complaint further alleged that the defendants wholly neglected to comply with such request and that the department of public works, on behalf of the plaintiffs, proceeded to repair the street and pavement, after the expiration of the time limited by the notice already mentioned, and did make such repairs and repavement, averring the expense incurred to accomplish that object.

The defendants did not deny the service of notice, but denied

that the Second avenue was out of repair in and about its rails.   It denied, too, that it was bound to pave or keep in repair so much of the pavement or street as lay between its double tracks, except such portion thereof as was in and about the rails of its tracks, and averred that it had at all times kept in repair the street and pavement in and about its rails to the entire satisfaction of the street commissioner and his successors; and it also denied any knowledge, information or belief as to whether the plaintiffs paid out or expended in and about the paving and repairing the sum named in the complaint.

Upon the trial the plaintiffs proved the condition of the street and the necessity of repairs. . They also proved by John B. Wilt, who was a foreman in the employ of the department of public works, that he had charge of the work of making the repairs mentioned; that his duties were to see that the men did the work and that they were supplied with material; that he called in the morning and afternoon of each day, and had the men's names who were working put down, and marked their time in a book in which he had their names, and that he marked their time when he found them there.   He said that he went around in the morning and afternoon; that he could not say how long he stayed each time with each gang — sometimes ten minutes and sometimes half an hour, according to what was necessary to be done; that although he was not there all the time he laid out the work necessary to be done, and when he returned would ascertain if it had been done. The plaintiffs also called as a witness Patrick Madden, who was the foreman of a gang at work doing the repairs.   He stated that he knew Mr. Wilt, and that the latter took the time of his gang each day in the morning and afternoon; that he reported such time correctly whether the men worked the whole or part of a day, and that he also reported to Mr. Wilt the quantity of new stone used. The plaintiffs also called Charles Coughlan, who was likewise the foreman of a gang.   He testified that the time of each gang was reported to Mr. Wilt twice a day, morning and afternoon, and that such report embraced the time and part times the men had worked; that if it occurred that a man would not work a whole day he had reported to Mr. Wilt the fact; that he also reported to him whether any new stone had been used in the performance of the work, and

if so, how much, and that these reports were correct. Mr. Wilt, after this testimony had been given, stated that he made the entries himself of these reports of the foremen of the gangs, and that the book in which they were entered was a book of original entry of such reports. It thus appears that the time during which the men worked who were engaged in making the repairs, and the quantities of new stone used, were reported to the plaintiffs' representative, who immediately entered them in a book kept for that purpose ; that these representations were made by the foremen of the gangs of men and were correctly made. These results are established by the testimony of the foremen of the gangs, and by that of the plaintiffs' representative, Mr. Wilt, to whom the communications were made by the foremen. It does not appear that the foremen kept any written account of the time made, and which would seem to have been entirely unnecessary for the reason that reports were made twice a day during the progress of the work to the plaintiffs' representative, who said he received and entered the time made by the several men of the several gangs. The report made by Mr. Wilt, based upon these facts and circumstances, was objected to, but received under the defendants' exception. There can be no doubt that under the rules of evidence it was properly received. It was in effect a statement as if thus made by the foreman of each gang : "Each one of the men I have named has worked this day," and that this was sufficient evidence to create a charge for each day's service of each man named, there can be no question. There cannot be the slightest doubt that this was the effect of the evidence, as already suggested, of the foremen of the gangs and of Mr. Wilt, the plaintiffs' representative.

In the case of *Shear* v. *Van Dyke* (10 Hun, 528), the question was what was the number of loads of hay delivered at a particular time, and a witness was called who stated that he could not then remember the number, but that he knew it at the time and told it to the plaintiff. The plaintiff was called as a witness and was allowed to state the number as communicated to him. The court said : "It has been repeatedly held that when a witness testifies that he made a memorandum correctly at the time the event occurred, but was unable to recollect the fact contained in it when examined in regard to the transaction, the memorandum may then be received in

evidence of the fact therein stated." And in *Payne* v. *Hodge* (7 Hun, 612), the plaintiff testified that he made entries in accordance with the statement made to him by other witnesses; and the latter testified that such statements were true. The evidence was held to be admissible. The case was affirmed on appeal to the Court of Appeals. (See 71 N. Y., 598). These views satisfactorily dispose of the exception taken to the admissibility of the report.

It is contended, however, on the part of the defendants, that assuming the work done to have been satisfactorily established by the evidence given for that purpose, the place in which the work was done was not embraced within the terms of the contract, that it was not a pavement of the street in and about the rails contemplated by the contract. The point made is in the language of the appellant. "The words in and about the rails do not refer to the space between the tracks." The learned counsel for the appellant has not favored us with what he regards as embraced within these words. His proposition is, as has already been shown, that they do not include the space between the tracks, and he leaves the court to make such interpretation of the words mentioned as in the exercise of its judicial function may be proper. He also contends that the question was not involved in the case of *McMahon* v. *The Second Avenue Railroad Company* (reported in 75 N. Y., 231). In that case it appears that the words in question were under consideration, and the court said : " Clearly all the space within the defendants' rails fell within its agreement," although it was subsequently said : " But we need not put so wide a construction as that upon the agreement. 'In and about' the rails means at least within the two rails of each track, and some space outside of each rail. Beyond doubt it means so far outside as the street surface was disturbed in the act of laying the track." The suggestion of the Court of Appeals, that all the space between the defendants' rails fell within the agreement made, is regarded as a proper construction of the words " in and about." Webster defines the word " in " to mean " within; inside of; surrounded by; inclosure by something regarded as surrounding; standing about; retaining; including, or the like ;" and by Worcester it is defined as " noting presence in place, time or state; within; not out; to take in; to inclose." The phrase in the agreement must be regarded as if it

were written "within and about the rails." And if this construction be given to it, it would embrace all the space within the rails employed by the defendants. The difficulties attending the paving of the street during the running of the cars of the defendants over the rails used for that purpose, and, as appears by the evidence in this case, the delays which the running of the cars may occasion in the performance of the work of repairing, may well be supposed to have been contemplated by the contracting parties at the time the agreement was made; and as the whole space within the rails was thus in the partial possession of the defendants, it would seem to have been a natural result of such use and possession that the duty of keeping it in repair should be imposed. But, without pursuing this subject any further, the conclusion already arrived at and expressed is, that all the space within the rails of the defendants was embraced within the agreement, and it was, therefore, their duty to keep it in repair. It follows that the contention of the defendants cannot be sustained with regard to the meaning of the words "in and about," and that there is nothing, therefore, in the point presented on the subject.

The defendants' counsel, upon the conclusion of the evidence, asked to go to the jury on the question of the reasonable value and cost of the stone and labor furnished, insisting that the defendants were only liable for the reasonable and necessary cost of the materials and labor furnished and done for and upon the space in question. The court had admitted some evidence bearing upon the cost of making the repairs which may be regarded as in conflict with the proof relating to that subject given on behalf of the plaintiffs. It was not asserted on the trial that the work done by the city was not well done. It was not claimed that any fraud had been perpetrated either in making the contract for the work or in doing it, but simply that it might be done for less if the company had made the repairs. It will not have been overlooked that the company had been called upon by proper notice to make the repairs which had become necessary. The notification mentioned is admitted to have been made because of the allegation in the complaint which is not denied. The defendant's duty, therefore, was to make the repairs which it neglected to do, and thus placed the burden upon the plaintiffs, who, in accomplishing that object,

were justified in resorting to the usual method to attain the end in view. There is nothing to show that the course adopted or any steps taken was for any other design or intention than to have the necessary labor performed in the usual and ordinary way ; and in the absence of any improper element the defendant had no right, having refused to make the repairs, to question the expense incurred. The plaintiffs were compelled to do the work which the defendants were bound to perform under their agreement, a burden which was unjustly forced upon them — unjustly, because it was the result of a violation of the agreement on the part of the defendants. And in the absence of fraud or proof of an unusual mode of procedure the plaintiffs were entitled · to the expense incurred, and this whether or not the defendants, by their own employes or by greater experience in the performance of the work required, could have done it for less than it cost the plaintiffs. For these reasons the decision of the justice presiding in the court below was justifiable in withholding the question suggested from the jury and directing the verdict which was rendered.

All the questions presented on this appeal which are worthy of consideration have thus been passed upon, and the conclusion of the court is that the judgment should be affirmed, with costs.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed with costs.