30   665
35   209
30   665
e42  465

[No. 4365.   Decided January 10, 1903.]

JOHN R. GRAY et ux., Respondents, v. WASHINGTON WATER POWER COMPANY, Appellant.

STREET RAILROADS — NEGLIGENT CONSTRUCTION OF TRACKS — PERSONAL INJURIES — INSTRUCTIONS.

In an action against a street railway company to recover for injuries resulting from plaintiff's buggy upsetting by reason of the wheels striking against the rails of the company's track, which had not been planked flush with the street as required by ordinance, an instruction that the company would be liable because of such failure to comply with the ordinance was not misleading because it added, "unless you should further find from the evidence that some sufficiently efficacious method be applied to keep the streets in safe condition for public travel"; there being evidence that the street had been rendered equally safe by substituting gravel for planks.

SAME.

An instruction that if the jury believe that the failure of defendant to plank its rails, as required by ordinance, at the point where plaintiff was injured constituted an obstruction to public travel, and plaintiff was injured by being thrown from her buggy because of such dangerous condition of the track, defendant was liable, was not erroneous as charging the absolute liability of defendant for failure to plank its rails so as to make them flush with the street, especially where the court further charged that if the jury found that if defendant protected its rails by some other method than planking, so as not to endanger the traveling public, the jury need not consider the requirements of the ordinance in determining the question of defendant's negligence.

INSTRUCTIONS — TO BE CONSIDERED AS A WHOLE.

Detached portions of an instruction will.not be considered by an appellate court; but all the instructions on the same subject must be construed together, in order to arrive at the intention of the court and the probable understanding of the jury.

SAME — CONFLICT.

An instruction that it was the duty of defendant to construct and maintain its tracks in the street in such a way as to be safe for travel by means of any vehicle drawn by the ordinary horse neither implies a requirement of absolute safety, nor is it contradicted by a later instruction that charges the jury that defendant is required to construct and maintain its road in such condition only as is reasonably safe for ordinary and reasonable use.

APPEAL — HARMLESS ERROR.

An appellate court will not be justified in reversing a judgment where an error has been committed, if the record, as a whole, overcomes the presumption of prejudice which is established by the commission of error, and shows affirmatively that no substantial rights of the appellant have been injuriously affected.

DAMAGES — COMPENSATION FOR PERSONAL DISFIGUREMENT.

In an action for personal injuries resulting from the negligence of another, the injured party is entitled to compensation for mental suffering and distress of mind on account of personal disfigurement.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*Stephens & Bunn* and *W. F. Townsend,* for appellant.

*W. H. Plummer* and *Thayer & Belt,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—Respondent Carrie Gray was driving in a one-horse buggy on the streets of Spokane. Her horse became frightened and ran away, and it is alleged that when the buggy struck the rails of appellant's street car line, which was maintained on the street, the respondent was thrown from the buggy and was injured, and that the

injury was caused by the negligence of the appellant in not maintaining its rails flush with the streets, in accordance with an ordinance of the city.    A more extended statement of this cause may be found in 27 Wash. 713 (68 Pac. 360). Upon the trial of the cause a verdict was rendered in favor of the plaintiff, and upon motion for a new trial the same was granted on the ground that the running away of the horse and the loss of control of the horse were the proximate cause of the accident and injury complained of.  This question came to this court on appeal and it was decided, in *Gray v. Washington Water Power Co.*, 27 Wash. 713 (68 Pac. 360), that the loss of control of a runaway horse would not prevent a recovery, notwithstanding the defective condition of the street.    The rule was announced that, where two causes combine to produce an injury to a traveler on a highway, both of which are in their nature proximate, the one being a culpable defect in the highway and the other some occurrence for which neither party is responsible, the municipality is liable, provided the injury would not have been sustained but for such defect.    This rule was applied to the appellant company, which was operating its cars under a grant of power from the city imposing the duty upon it to keep its rails flush with the street, and the judgment for a new trial was reversed, and the cause remanded, with instructions to deny the motion. Judgment was then entered in favor of respondents for the amount of damages found by the jury, from which judgment this appeal is prosecuted.

It is assigned that the court erred in giving instructions numbered 5, 6, 9, 16, and 17, and in refusing to give instruction No. 6 asked by appellant, and in giving it in a modified form.    In answer to the alleged error in the refusal of the court to grant a new trial on the ground of in-

sufficiency of the evidence to sustain a verdict, and because the verdict is against the law, if these questions were not decided in opposition to appellant's contention on the former appeal, it may now be stated that on every material fact put in issue by the pleadings there was such a conflict of testimony as rendered necessary their submission to the jury; and, conceding the correctness of the law announced by this court on the former appeal, and which has become the law of the case, we can see no reason for interfering with the verdict of the jury, if the cause was submitted upon proper instructions.

The first instruction assailed by the appellant is No. 5, which is as follows:

"The ordinance which has been referred to in the complaint, and which has been admitted in evidence, contains certain requirements and regulations as to the manner in which the defendant's tracks shall be kept and maintained by it. These requirements are valid regulations imposed by the city of Spokane, and are imposed upon the defendant for the purpose of compelling the streets and highways to be kept in a safe condition for public travel, so far as the defendant's tracks are concerned; and if any person is, without negligence on his or her part, injured on account of the negligent failure of the defendant company to comply with the terms of said ordinance in respect to the condition of its track, then such person is entitled to recover from the defendant the damage so sustained, unless you should further find from the evidence that some sufficiently efficacious method be applied to keep the streets in safe condition for public travel."

The latter part of the instruction is criticized as being meaningless and liable to misconstruction, but we think the portion of the instruction objected to is, and would so be understood to be, a modification in appellant's interest. The jury doubtless understood the court to mean that, notwithstanding the failure of defendant company to comply

with the terms of the ordinance, it would not be liable if any efficacious method other than the one prescribed by the ordinance had been adopted, and that the language was used with reference to the contention of the appellant that it rendered the street equally safe by substituting gravel for planks,—the ordinance prescribing planks.  We will notice the objection to the use of the words "safe condition" in the discussion of a subsequent assignment.

Instruction No. 6 is as follows:

"The plaintiffs claim that the defendant negligently failed to comply with the terms of the ordinance which had been received in evidence in the following particulars: They claim that on May 2, 1901, at a point on Broadway which has been referred to by the witnesses, one or more of the defendant's street car rails were in such a condition that the tops of the rails were not flush with the surface of the street, but projected above the same sufficiently high to cause an obstruction to public travel, and also claimed that there were no planks laid along the rails at said point in the manner mentioned in the ordinance or at all, and they claim that the alleged absence of planks, and the alleged projection of the rails above the surface of the street, was caused by the negligent failure of the defendant to maintain its track and roadbed as required by said ordinance.  And I instruct you that if you believe from the evidence that said track was on May 2, 1901, in the condition claimed by the plaintiffs, and believe that such condition constituted an obstruction of public travel, and also believe that it was by reason of said alleged dangerous condition of the track that the plaintiff Carrie Gray was, without negligence on her part, thrown from her carriage as claimed by her, and received the injuries complained of, then I instruct you that the plaintiffs are entitled to recover damages from the defendant."

It is contended that by the terms and tenor of this instruction the jury was authorized to render a verdict for respondents, as against appellant, if, without fault on the

part of Mrs. Gray, she sustained injuries on appellant's tracks at a point where they were not planked in accordance with the literal wording of the ordinance. But the court could not have been understood to have meant to have subjected the defendant to an absolute liability in the case of a failure to use planks as required by the ordinance, for the condition was prescribed that the jury must find, in addition to the failure to use the plank, that the condition wrought by such failure constituted an obstruction to travel. If there were any doubt about the meaning of the court, which we think there is not, it is made clear by instruction 17, which is as follows:

"If you should find from the evidence that although the defendant did not put planks along the sides of its rails as required by said ordinance, yet if you should find from the evidence that the defendant did by some other method protect its rails so that they would not endanger the traveling public, as hereinbefore stated, then you will not consider said ordinance in determining whether or not defendant was negligent in the respect mentioned."

These two instructions, considered together, cannot possibly bear the construction placed upon them by counsel for appellant. Instruction No. 16, the giving of which is assigned as error, is as follows:

"It was the duty of the defendant to construct and maintain its tracks in the street in such a way as to be safe for travel thereon by means of a buggy or other vehicle drawn by the ordinary horse, having the ordinary disposition, allowing for the ordinary incidents of caprice or fright and driven by an ordinarily careful and prudent person."

This instruction involves in some degree the same objection that is urged to instruction No. 5, and it is insisted that it employs the standard of perfection, and charges the appellant with the impossible task of constructing and maintaining its tracks in such a manner as to render the

streets absolutely safe for the purpose of travel in vehicles drawn by ordinary horses. If this were true, the instruction would doubtless contain reversible error, for a reasonably safe place, or a street reasonably safe for travel, is unquestionably the requirement of both reason and authority. But we do not think this instruction imposes such a duty. The essence of it was that the street must be kept safe for ordinary use under ordinary circumstances, and we do not think it can be construed as imposing the duty of absolute safety. Such language is not employed, and counsel for appellant, in his brief, finds it necessary to employ language that is not used in the instruction, and imputes to the instruction the same meaning it would have if the language he used in his criticism were used in the instruction, viz., "to render the streets absolutely safe." If the court had used the words "absolutely safe," there would have been no doubt as to what was meant. But we find from a review of the authorities that the words "safe" and "care" and "safe place" are frequently used interchangeably with "reasonably safe," "reasonably safe place" and "reasonable care." "Safe" and "unsafe" are words frequently used in comparison by courts in discussing the question of a reasonably safe place, and evidently without any intention of changing the well-established rule of reasonable care or a reasonably safe place. But in any event, detached portions of an instruction cannot be considered by an appellate court; all the instructions on the same subject must be construed together, to arrive at the intention of the court and the probable understanding of the jury. Instruction 5, asked for by defendant, and, as modified by the court, given, was as follows:

"You are instructed that the defendant is not required or compelled to construct a street railway track or tracks at the point or place of the accident, or at any other point

or place, so as to provide for or against run-away horses, rigs or teams; that is, it is required to construct and maintain its road in such condition only as is reasonably safe for ordinarily reasonable and prudent persons using the streets at the ordinary and usual rate of speed, and driving a reasonably safe and gentle horse, allowing for the disposition of an ordinarily safe horse, and the ordinary incidents of caprice or fright, driven by an ordinarily careful and prudent person."

So that it would seem that the reasonable degree of safety imposed by the law was given to the jury in plain and unequivocal terms, and, conceding the contention of counsel for appellant that contradictory instructions raise a *prima facie* presumption of prejudicial error, we do not think the principle is applicable to the conditions under discussion. Doubtless the reason for the presumption is that the jury is confused rather than enlightened, and is as liable to follow the wrong instruction as the right one. But these instructions do not seem to be contradictory. On the contrary, the last instruction, instead of contradicting the first, made plain, definite, and certain that which was before indefinite. If modified instruction No. 5 had immediately followed and been a part of instruction No. 16, the latter part of the instruction would certainly have been understood as amplifying and making more definite the first part. It performed that office none the less effectively because it was given in a subsequent instruction. In addition to this, even if the instruction had been technically erroneous, under the circumstances of this case, and the special findings of the jury, the error would have been harmless, conceding the rule that, when error is committed, it will be held to be prejudicial unless it affirmatively appears to the contrary.

The really practical contest in this case was the alleged

contributory negligence of Mrs. Gray, and the alleged neg-
ligence of the company in maintaining its rails above the
surface of the streets.   The jury was instructed that the
plaintiffs could not recover unless it found that the rails
of the track, at the time and place of the accident, were
above the surface of the ground; that there was no con-
tributory negligence on the part of Mrs. Gray; and that
the raised condition of the street was the proximate cause
of the injury.   The jury found, in answer to a special in-
terrogatory, that the track was raised above the surface
of the street, and found for the plaintiffs under the fur-
ther instruction that they could not find for the plaintiffs
unless they found that Mrs. Gray was thrown out by the
buggy striking the car rail at such place, and without con-
tributory negligence on her part.  So that, under the ruling
of this court on the former appeal, no other verdict could
have consistently been returned by the jury.   An appellate
court will not be justified in reversing a judgment where
an error has been committed if it further appears from the
whole record that such error is immaterial, or, in other
words, if the record, as a whole, overcomes the presump-
tion of prejudice which is established by the commission
of error, and shows affirmatively that no substantial rights
of the appellant have been injuriously affected.   In this
case, in addition to what we have said in relation to the
two main issues controverted, the jury, having found that
the track was raised in violation of the law, and that the
accident was caused by the buggy striking the rails with-
out fault on the part of Mrs. Gray, must have concluded
that the track was not maintained in a reasonably safe
condition.

The objection urged to instruction No. 9 is that it in-
dorsed the doctrine of compensation for mental suffering

and distress of mind for disfigurement. On this subject the authorities are somewhat divided, though the decided weight of authority, we think, is to the effect that compensation can be recovered for such damages. We also think that such decisions are sustained by the better reasoning. Some of the cases cited by appellant, while permitting compensation for mental suffering induced by physical pain, distinguish such mental suffering from suffering arising from causes other than physical pain, viz., such suffering as arises from the contemplation of a maimed body or deformed face; and the reason assigned is that this element of damage is too vague and indefinite to be susceptible of proof. But we think this discrimination cannot be maintained in sound reasoning, and that mental suffering which is induced by the relations of mind and body is as difficult to measure as mental suffering induced by mortification and disfigurement. Not all people suffer equally from the same bodily injury. The finer and more delicate the physical organization, the more acute will be both the physical and mental suffering. In practice, mental suffering is always an element considered by juries in slander and libel cases, in actions for false imprisonment and breach of promise, and many other cases of like character, and ought to be. The wound to one's sensibilities is none the less painful when one's character is slandered. The law ought not to grant redress alone to the business man who sustains commercial damage, and refuse redress to others who have sustained a more poignant infliction. And he who negligently causes an injury to another who is faultless, which makes the latter an object of pity and abhorrence to his fellow men, and an object of ridicule to the thoughtless and unfeeling, and deprives him of the comfort and companionship of his fellows, ought to respond in damages for

the injury sustained. It is true that there is no gauge furnished by the law for measuring such damages, and that it is, to a great extent, sentimental. But there is an element of sentiment in all damages,—even in the possession and use of money itself,—for a given amount of money may be of far more value to one person than to another. While all these considerations tend to prevent the assessment of damages in any case from being absolutely adequate or measured with exactness and understanding, they will not prevent the approximate measurement, and must be submitted to the best judgment of the jury. We are unable to see anything in the further contention that under this instruction the jury was authorized to bring in a verdict for double damages.

Objection was made to instruction No. 17 and modified instruction No. 5, but is not discussed in appellant's brief. They seem to us, however, to correctly state the law applicable to the case.

We think the instructions, as a whole, were fair, and favorable to appellant; and the jury, under such instructions, having found the issuable facts against the appellant, no matter what the opinion of this court might be on those questions of fact, we do not feel justified in disturbing the verdict.

The judgment will therefore be affirmed.

REAVIS, C. J., and MOUNT, FULLERTON and ANDERS, JJ., concur.