[No. 8325. Department One. February 14, 1910.]

## W. H. KINCAID, *Respondent*, v. WALLA WALLA VALLEY TRACTION COMPANY, *Appellant*.[1]

STREET RAILWAYS — STREETS — DEFECTIVE TRACKS — FRANCHISE— LIABILITY. A street railway company, under its franchise requiring it to plank the street between the rails, as well as under the common law, is liable to a traveler who, in driving across the tracks, sustains injury through the company's maintaining its rails without planking, in violation of the franchise, and negligently extending six inches above the ties unprotected except by soft yielding dirt, which gave it the appearance of safety: and it is immaterial that the street was planked at street intersections, as the traveler's right to cross the tracks is not limited to crossings.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. A new trial for newly discovered evidence is properly denied where the evidence either fails to meet the issue or is cumulative.

NEW TRIAL—DILIGENCE. In an action for injuries sustained by a traveler, who alleged that his wagon wheels came in contact with unguarded street car tracks where the company should have planked the street, lack of diligence will prevent the granting of a new trial for the newly discovered evidence of a witness who would testify that the wagon tracks indicated that the wheels did not come in contact with the rails, where it appears that the company's manager visited the scene of the accident soon after the accident and before removal of the wagon, and did not investigate to ascertain whether the wheels had come in contact with the rails.

NEW TRIAL—SECOND MOTIONS—ORDER—FINALITY. After the denial of a motion for a new trial, required to be made within a specified time, the trial court is without jurisdiction to consider another motion for a new trial.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $5,500 for personal injuries sustained by the driver of a water wagon, 64 years of age, earning four dollars per day with his team, is not excessive, where he sustained a compound comminuted fracture of the left ankle and lower part of the right leg, bones were crushed and protruded through the flesh, he was confined to his bed three months, the healing was not complete in six months, and the injury was permanent, requiring the use of a stiff shoe and crutch.

APPEAL—REVIEW—VERDICT—EVIDENCE. An objection that a verdict is not sustained by competent evidence cannot be urged where

[1]Reported in 106 Pac. 918.

·the record thereof is unintelligible by reason of illustrative refer-
ences to a map which the witness was evidently indicating.

SAME. The verdict of a jury sustained by competent evidence
will not be set aside because the appellate court might have reached
a different conclusion.

STREET RAILWAYS—DEFECTIVE TRACKS—CAUSE OF ACCIDENT—EVI-
DENCE—SUFFICIENCY. There is sufficient evidence to sustain a ver-
dict depending upon the fact that the left rear wheel of a water
wagon came in contact with an unprotected street car rail near a
street crossing, where the driver of the wagon testified that in
making a turn at the crossing both left wheels of his wagon crossed
the track, that the front wheel crossed back before leaving the
planking at the crossing, and the rear wheel caught on the rail and
slid, and the right wheel broke, although the trial judge and the
appellate court doubted whether the accident could have occurred in
that way; since the record fails to show physical facts that would
control the verdict (MORRIS and CHADWICK, JJ., dissenting).

NEW TRIAL—EVIDENCE—SUFFICIENCY. The fact that the trial
judge's opinion as to the facts established differs from the opinion
of the jury, as expressed by the verdict, does not require him to
grant a new trial.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered March 29, 1909, upon the
verdict of a jury rendered in favor of the plaintiff for per-
sonal injuries sustained in driving across a street car track.
Affirmed.

*Rader & Barker*, for appellant.
*Sharpstein & Sharpstein*, for respondent.

GOSE, J.—This is a suit to recover damages for personal
injuries sustained by the plaintiff on September 26, 1908.
There was a verdict and judgment in his favor for the sum of
$5,500. The defendant has appealed.

The complaint in substance states that, at the time of the
injury, the appellant was engaged in the operation of a
street car line upon Whitman and other streets, in the city of
Walla Walla; that its right to construct its tracks and to
operate its road was granted by an ordinance of the city
which provides that on unpaved streets it shall lay planks

outside of the rails one foot in width and flush with and against them, and that inside of the rails it shall lay planks of the same width properly champered to fit them; that Whitman street is unpaved, and that the appellant had not placed any planks or other firm substance along the rails, but had placed soft dirt adjacent to them; that the rails extended about six inches above the ties upon which they were laid; that the respondent, on the day he received the injury, was driving a team attached to a wagon, on which there was a tank containing water, on Whitman street, immediately east of its intersection with Palouse street; that he undertook to drive across the steel rail; that the wheels of the wagon caught against it, sank into the soft dirt, slid, and broke the axle of the wagon, throwing the respondent to the ground; that the tank of water rolled off the wagon onto the respondent, breaking his leg and inflicting permanent injuries.

The appellant moved to strike the following from the complaint:

"That defendant had negligently failed to place adjacent to said rails any plank or paving or other hard or firm substance on either side of either of the two parallel rails, constituting part of said system, at said place, and had negligently placed soft yielding dirt adjacent to said rails, so that the wheels of plaintiff's wagon sank into said dirt; that such planks placed as required by the ordinances hereinafter referred to would have rendered said rails and street safe for public travel and the want thereof, or of some other hard substance in lieu thereof rendered the same unsafe, all of which acts of negligence were unknown to plaintiff and that by reason thereof. . . . which ordinances contained a provision to the effect that on unpaved streets, the rails should weigh not less than fifty-six pounds to the yard in length, and that there should be a plank one foot in width to be laid flush with and against the rail, and on the inside of each rail there shall be a plank one foot in width laid parallel with and champered so as to fit the rail; that Whitman street is an unpaved street; that the defendant failed and neglected to place any of said planks in position or to lay the same at all

or to use any other substance therefor, or in any other manner to render said track safe for teams to cross the same."

The motion being overruled, appellant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer being overruled, it answered, denying any negligence on its part, and alleging affirmatively, (1) that the respondent was guilty of contributory negligence, and (2) that the ordinance referred to in the complaint provides that the planking may be waived by agreement between the city and the appellant, and that at the time the line was constructed the duty to plank was so waived. The reply put the new matter in issue, except it admitted that the ordinance contained a provision that the planking may be waived by an agreement between the city and the appellant. It is admitted that the appellant was operating a street car line in the city under an ordinance containing the provisions alleged in the complaint. It is also admitted that the track was planked on Whitman street at its intersection with Palouse street.

It is first urged that the court committed error in refusing to strike the portions of the complaint to which the motion was directed, and in overruling the demurrer. We will consider these assignments together. The argument is made that the ordinance is in the nature of a police regulation for the benefit of the city and not for the benefit of the people who travel the streets, and that the appellant is not liable to an individual for an injury resulting from its noncompliance with the conditions of the ordinance. In support of this contention it cites *Fielders v. North Jersey Street R. Co.*, 68 N. J. L. 343, 53 Atl. 404, 54 Atl. 822, 96 Am. St. 552, 59 L. R. A. 455; *Leary v. Boston El. R. Co.*, 180 Mass. 203, 62 N. E. 1, and Nellis on Street Surface Railroads, 57. In the *Fielders* case, which was a suit for damages for personal injuries, the defect which caused the injury was a hole in the street pavement between the rails of the track. Upon the

facts in the case it was held that the company was not liable to an individual for an injury sustained under an ordinance requiring all street railway companies to pave and keep in repair the spaces between the rails of the track and for one foot outside of the outer track, and that the ordinance was invalid as an assumption of the power to tax and not within the police power. As showing that it is not authority in the case at bar, we make the following excerpts from the opinion:

"There is nothing in the case to show that the pavement in question had been laid or maintained by the defendant, or that the defect resulted from any act of commission on the defendant's part. Nor is there anything to connect the defect with the defendant's rails or sleepers, or to show that anything done or omitted in the construction, maintenance, or operation of the railway produced the defect. The location of the hole between the rails is a mere circumstance, without causative significance. And the only default attributable to the defendant is the failure to repair. It is familiar law that a railway company, having the right to lay tracks in a public street, is bound, by the general principles of the common law, and without either a specific statute or ordinance or a contractual obligation, to lay its tracks in a proper manner, and to keep them in a proper state of repair. . . . But the present case is devoid of evidence to show that any liability for the repair or maintenance of the street pavement was imposed upon the defendant as a condition of its right to exercise its franchise, or that the defendant, by any contract, has undertaken such a duty."

In the *Leary* case it is conceded that, where the statute granting a charter to the street railway company provides that the company shall maintain and keep in repair the portion of the street occupied by its tracks, the company is liable to the traveler who sustains an injury through its failure to comply with such provision. Nellis, on Street Surface Railroads, at page 54, states that the rule is that the authority granting the franchise may determine and dictate in what manner and under what conditions the franchise may be enjoyed.

It will be observed that these cases are not authority for the contention that a street railway company can construct its track under a franchise imposing conditions upon which the privilege may be enjoyed, and escape liability to one who has been injured by its noncompliance with the conditions. As the learned trial court remarked, the granting of the franchise to appellant imposed upon it the duty of placing the track in a reasonably safe condition. Neither the municipality nor its creatures can place an obstruction in a street which causes an injury and be exempt from liability. This view is supported by the following cases: *Reynolds v. Great Northern R. Co.,* 40 Wash. 163, 82 Pac. 161, 111 Am. St. 883; *Gray v. Washington Water Power Co.,* 30 Wash. 665, 71 Pac. 206; *McMahon v. Second Avenue R. Co.,* 75 N. Y. 231.

In the *Reynolds* case it was held that a shipper could recover damages to live stock caused by a failure upon the part of the carrier to unload them after confinement for a period of twenty-eight consecutive hours, in violation of § 4386, U. S. Rev. Stats. In the *Gray* case the street car company was held liable for an injury resulting from its failure to maintain its rails flush with the street, as required by an ordinance of the city. In the *McMahon* case it was held that, the railroad company having contracted with the municipality to keep the streets safe for travel, and having failed to do so, one who was injured through its default had a right of action against it.

Moreover, independent of the obligation arising from the ordinance, the appellant could not so obstruct the street as to render it dangerous to travel and be exempt from liability to a person injured thereby; and the allegations in the complaint that the rails extended about six inches above the ties upon which they were placed, that they were unprotected except by soft and yielding dirt which the appellant had placed about them, and which gave the track the appearance of being safe when it was in fact dangerous, and

that the respondent, deceived by the apparent safety of the place, drove upon the rails and was injured, state a cause of action. *McMahon v. Second Avenue R. Co., supra; Sexton v. Zett*, 44 N. Y. 430; *Wolfe v. Erie Tel. & Tel. Co.*, 33 Fed. 321; *San Antonio Rapid Transit Street R. Co. v. Limburger*, 88 Tex. 79, 30 S. W. 533, 53 Am. St. 731; *Worster v. Forty Second Street etc. R. Co.*, 50 N. Y. 203.

The fact that the track was planked at street intersections does not exempt the appellant from liability. The right of a traveler to cross a street is not limited to such points. In the *Wolfe* case the law of the street is aptly and tersely stated in the following language:

"The law of the public street is like the law of the sea,—it is the right to move on, the right to pass to and fro, without let or hindrance, other than such temporary stoppages in transit as are incident to the business of travel."

It is next urged that the court erred in refusing to grant a new trial, (1) because of newly discovered evidence; (2) because the damages are excessive; and (3) because of the insufficiency of the evidence to support the verdict. We will consider these points in the order stated.

The newly discovered evidence relied upon is that a witness was at the place where the accident occurred before the respondent had been removed; that he examined the surroundings with the view of determining the cause of the accident; that he observed two parallel wagon tracks crossing the street car track at an angle, passing off the track on Whitman street a few feet east of its intersection with Palouse street; that he did not see any wagon track south of the south rail. Palouse street runs north and south, and Whitman street runs east and west. The car track, as we have stated, is on the latter street. The respondent testified, that he was driving a water wagon north on Palouse street; that he turned east on Whitman street where it intersects with Palouse street to get south of the street car track; that in making the turn the two left wheels passed over the south rail of

the street car track; that the left hind wheel caught on the inside of the rail and caused the accident. The accident occurred on Saturday. A witness for respondent testified that he examined the place of the accident the following Monday morning; that he saw a wheel mark indicating that the wheel had slipped a distance of about one and one-half feet inside of the car rail and two or three feet east of the planking. Another of the respondent's witnesses testified that he was at this place on Sunday following the accident, and that he saw marks indicating that the wheel had slipped against the rail. The newly discovered evidence did not meet this issue. There is a diagram attached to the affidavit, showing that the track which the witness saw passed onto the street car track from the north side of Palouse street, passing off the track on the south side of Whitman street east of the intersection of the streets. These were not the tracks mentioned by the respondent's witnesses. If the evidence relied upon for a new trial meets the issue, it was cumulative.

The record, however, shows a lack of diligence on the part of the appellant. Its manager testified that, on the afternoon of the day of the accident, as soon as he heard of it, he went to the place where it occurred and made an examination of the surroundings. The wagon and tank had not then been removed. There is no suggestion in his testimony that he examined the track to ascertain whether the wagon had come in contact with the rails. Due diligence required the appellant to begin its inquiry when it had notice that the accident may have resulted from its negligence. If the respondent's wagon did not come in contact with the rails, and there was no soft dirt about them, the physical evidence was not present to establish that fact. The appellant did not make the investigation which ordinary prudence demanded.

The judgment was entered March 29, a motion for a new trial filed March 30, and denied on April 9. Thereafter, and

on April 20, the appellant filed a second motion for a new trial, together with certain affidavits. In passing on this motion the court remarked that, having denied a motion for a new trial, he had no jurisdiction to hear a second motion; that if he could hear a second motion, he could hear a dozen, and a judgment would have no finality as against motions for a new trial. We think the court announced the correct rule. The statute permits a motion for a new trial to be filed within a fixed time. When it has been denied, the judgment becomes final as against further like motions. The statute is not susceptible of any other reasonable interpretation. If it were, there would be no finality to a judgment so long as the losing party desired to attack it by such motions. This view is supported by analogy, by the cases holding that but one motion to vacate a judgment can be interposed, and that the remedy of the moving party is by appeal if his motion is denied. See, *Meisenheimer v. Meisenheimer*, 55 Wash. 32, 104 Pac. 159, where the cases from this court are collated.

We do not think the damages are excessive. The respondent, at the time he received the injury, was sixty-four years of age, in good health, and earning with his team four dollars per day. An examination of the evidence discloses that he was confined to his bed about three months; that he had a compound, comminuted fracture of the left ankle and the lower part of the right leg; that the bones were crushed into fragments and protruded through the flesh in three places; that the process of healing was not complete at the time of the trial, six months after the injury; that the injury is permanent; that he will be able to get around by the use of a stiff shoe with the aid of a crutch, and as the doctor expressed it, "that is about all that he can ever expect to do." With such an injury, if he is to be allowed anything for pain and suffering, the damages awarded are not excessive. The remarks of the trial judge upon the amount of damages will be considered later.

It is next urged that there is no competent evidence tending to show that the left rear wheel of the wagon came in contact with the steel rail, and it is argued that the respondent's testimony shows that the left front wheel passed off of the track at the east end of the planking, and that in making a turn to the right and to the east the left rear wheel would not go as far north as the left front wheel had gone, and that the rear wheel would have left the plank at some point on the planking west of the point where the front wheel left the track. The respondent while testifying was evidently indicating upon a map the point where the front wheel passed on and off the street car track, and a part of his testimony is therefore unintelligible, as will be seen from the following questions and answers, which are illustrative of a considerable portion of his testimony:

"Q. You are not sure whether your left front wheel then passed over the south rail or not? A. Well, I am pretty sure it passed over it, but then I turned so short here when I came back I think I went off right here. Q. And when the left front wheel passed over the rail, then it was still on the planked portion of the street? A. Yes, sir."

We cannot determine from this testimony whether the witness had reference to the passing of the wheel to the north or its return to the south of the rail.

Argument is also made that there was a defect in the left rear wheel, and that if it had come in contact with the rail, it and not the right wheel would have broken. The record, however, shows that there was a slope toward the curbing, and that the tank was only partially filled with water. From this testimony the jury could conclude that the water shifted to the lower side of the tank, causing the right wheel to break. We cannot say from the record that there are physical facts present which should control the verdict. As we have stated, the court directed the jury that there could be no recovery if the respondent did not drive his wagon on the track where the planking should have been. Whilst, if it was an original question, the writer, as he un-

derstands the testimony, would be of the opinion. that the wagon did not come in contact with the rail, there is competent testimony upon which the jury was warranted in reaching a different conclusion, and we cannot therefore disturb the verdict.

In passing on the motion for a new trial the trial judge said that the evidence impressed him with the belief that the wagon did not pass over the unplanked part of the track, but that the wheel broke from the weight of the load, the defective axle, and the inclination of the surface of the street toward the parking, and that he was inclined to regard the amount of damages awarded by the jury as "more than they ought to be." He further said: "Still the evidence was conflicting, . . . and the jury have reached a different conclusion. . . . Ten men are much less likely to be mistaken in a matter of this kind than one man. . . . I do not feel warranted in granting a new trial on either of these grounds." It is contended that the view entertained by the trial judge on these questions made it imperative upon him to grant a new trial. It requires no argument to show that the trial judge is not required to grant a new trial in every case where his opinion upon the facts differs from the opinion of the jury as expressed in the verdict. *Suell v. Jones,* 49 Wash. 582, 96 Pac. 4; *Columbia and Cowlitz River Boom and Rafting Co. v. Hutchinson,* 56 Wash. 323, 105 Pac. 636.

Finding no error in the record, the judgment will be affirmed.

Rudkin, C. J., and Fullerton, J., concur.

Morris, J. (dissenting)—I dissent. It is to my mind conclusively shown by the physical facts surrounding the accident that it could not have occurred in the manner contended for by respondent. If, as testified by respondent—and his is the only testimony in the record upon the point—his left front wheel passed over the rail while it was still on the planked portion of the street, it would be physically impossible for the

rear wheel to describe a greater arc than the front wheel and leave the rail on the unplanked portion of the street; and the accident could not have happened as respondent describes it unless such was the case. It is argued by respondent that it would be possible for the team and wagon to straighten out so as to make the hind wheel follow in the track of the front wheel. Admitted; but in so doing the wagon would have been moved some distance beyond the crossing, and both the front and hind wheels would have caught inside the rail beyond the planking. The wagon broke down within three feet of the crossing and fell partly on the curb which was fourteen feet from the rail. To uphold the verdict we must hold that, in going a distance of three feet, the hind wheel caught on the rail and the wagon fell over so as to cover a distance sidewise of from ten to fourteen feet; at any rate, far enough over so that an automobile passed between it and the rail.

It is to my mind clearly shown by the evidence and the attendant facts that the wheel broke in passing over the crossing where there was a drop of some inches. There is no other theory that can account for the position of the wagon upon the ground after the break. The reading of the record seems to have convinced the writer of the majority opinion that the wagon did not come in contact with the rail. The judge who tried the case gives it as his belief, after hearing the evidence and being familiar with the situation locally, that the wagon did not pass over the unplanked part of the track. Juries are sometimes moved, by facts that should not control them, to go outside the evidence and render verdicts which are contradicted by all the physical and un-controvertible facts in the case. Whenever such fact is apparent to either the trial or appellate court, it should unhesitatingly speak and order a new trial where a verdict may be rendered upon the evidence, and thus justice be done all parties.

The judgment should be reversed and a new trial ordered.

Chadwick, J., concurs with Morris, J.