[No. 20890.   Department Two.   May 14, 1928.]

MARY ROALSEN, as Administratrix, Respondent, v. OREGON STEVEDORING COMPANY, INCORPORATED, Appellant.[1]

[1] TRIAL (43)—MISCONDUCT OF COUNSEL—SHOWING INDEMNITY IN-SURANCE. In a personal injury case, the *voir dire* examination of jurors is not objectionable as improperly showing defendant was protected by indemnity insurance, where jurors engaged in the insurance business were merely questioned whether, from such business, they had a prejudice against personal injury cases.

[2] MASTER AND SERVANT (94)—PERSONAL INJURIES—ASSUMPTION OF RISK—DANGEROUS PLACE—SHIPPING. A stevedore's assumption of risk while acting as hatch-tender is a question for the jury, where he was precipitated into the hold of the vessel and killed when the strong-back supporting the planks on which he was standing was knocked out of place, because not properly fastened, as he had a right to assume it would be, when the foreman in charge directed him to the place without informing him that the beam was not fastened.

[3] DEATH (27)—ACTION FOR CAUSING—DAMAGES—EVIDENCE—SUFFI-CIENCY. In an action for the wrongful death of a husband and father, the basis for substantial damages is sufficiently estab-lished by proof of the deceased's age, health, earning capacity, character for industry, average wages, expectancy of life and the condition in life, ages, and dependency of the beneficiaries of the suit.

[4] DAMAGES (108)—EVIDENCE (4-3)—STATISTICAL FACTS—MORTAL-ITY TABLES. The court takes judicial notice of the standard mortality tables, and may inform the jurors of the life expec-tency of a person without taking evidence of the matter.

Appeal from a judgment of the superior court for Clark county, Simpson, J., entered January 28, 1927, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

[1] Reported in 267 Pac. 433.

*E. L. McDougal,* and *Miller, Wilkinson & Miller,* for appellant.

*Lord & Moulton,* for respondent.

FULLERTON, C. J.—Sigurd H. Andresen, while in the employ of the appellant, Oregon Stevedoring Company, Inc., was accidentally killed. The present action was brought by the respondent, Roalsen, as administratrix of his estate, under the Federal liability act, to recover in damages against the appellant for the benefit of his wife and children. There was a trial by jury, which resulted in a verdict and judgment in favor of the administratrix. It is from this judgment that the appeal is prosecuted.

Andresen was a longshoreman, and was killed while engaged in the work of discharging cargo from the steamship "Finn," then in the harbor at Portland, Oregon. The appellant had contracted to discharge the cargo, and began the work of discharging from the No. 5 hatch of the vessel at about eight o'clock in the morning of August 30, 1926. The cargo on this part of the vessel was sugar in sacks, and was stored aft in the lower hold of the vessel. It was removed by loading it in fixed quantities onto carriers at the place of storage and then hoisting it to the upper deck of the vessel through the No. 5 hatch, from whence it was swung to the wharf alongside of which the vessel was moored. The power necessary to do the lifting was furnished by two steam winches, the one located aft and the other forward of the hatchway. Some sixteen men were engaged in the work, all working under the direction of a foreman by the name of Petro.

The hatchway was oblong in shape, and, when the work began, was covered. The covering was formed by placing a steel beam, called a strong-back, across

the center of the opening of the hatchway, longways of the opening but crossways of the vessel, and placing boards over the opening, the boards resting at one end on flanges extending out from the beam and at the other end on similar flanges extending out from beams at the sides of the hatchway. The covering was thus in two sections, one section of which could be removed without disturbing the other.

Preparatory to removing the cargo, the covering of the hatchway was removed from one side of the center beam only, and such of the cargo as was removed prior to the death of Andresen was removed through the opening so formed. To successfully perform the work, required the cooperation of the winch-drivers and the workmen in the hold of the vessel. To secure this co-operation, a hatch-tender was necessary. He was obligated to stand in a position where his signals could be seen by the winchmen and where he could observe the signals of the workmen in the hold. While the evidence is somewhat in conflict upon the point, there is evidence from which the jury were warranted in finding that the only place the hatch-tender could stand to perform his duties efficiently was on the covered portion of the hatchway near the center beam. When the work started, Petro took upon himself the duties of hatch-tender. After the work had proceeded for some time, he directed Andresen, who was then working on the wharf, to take up the work. Andresen obeyed, taking the position on the covered part of the hatchway where he found Petro standing. After he had been working in this position for about an hour, a load brought up from the hold, for some cause not clearly explained in the record, caught on the center beam, lifted one end of it from the socket in which it rested, and moved it sufficiently far to let the boards

on which Andresen was standing fall into the hold. Andresen fell with them and was killed by the fall.

The negligence alleged and attempted to be proven was that the appellant did not furnish Andresen with a safe place in which to work; the negligence arising from the fact that the ends of the center beam were suffered to rest loosely in the sockets, without fastenings of any kind, whereas it was necessary to the safety of the workmen, and usual and customary when hoisting cargo through the hatchway, either to remove the covering entirely, including the beam, or to bolt or leash the beam so as to make it secure against disturbance by the striking of the hoists against it.

[1] Turning to the assignments of error, the first to be noticed is founded on the *voir dire* examination of two of the prospective jurors. It is contended that these were questioned in such a way as to indicate to the jurors generally that the appellant was protected by indemnity insurance. But we think the contention hardly merits extended discussion. One of the persons answered to a query as to his occupation, that he was engaged in the insurance business, and the other, a woman, in response to a similar query, answered that her husband was engaged in such business and that she sometimes took applications for insurance. Each of the prospective jurors was asked whether, from the business in which they were engaged or for any other reason, they had a prejudice against the action which the respondent was waging, it being an action to recover for personal injuries. Some further questions were propounded along the same lines, having perhaps less pertinence, but we find nothing coming within the ban of the rule which the appellant invokes.

[2] It is next contended that Andresen assumed the risk of injury from an accident such as here occurred. But we think, in the light of the record, this

was a question of fact for the jury rather than one of law for the court. The evidence very conclusively shows that Andresen had nothing to do with the preparations made on board the vessel for discharging the cargo. When he reached the place of work on the morning it was commenced, he was put to work upon the wharf, and there continued until he was suddenly called by the foreman to take up the duty of hatch-tender. While he was bound to take notice of all of the apparent and obvious dangers incident to the duty, he had the right to assume that all of the usual and ordinary precautions had been taken to make safe the place of work; and he assumed no risk of injury arising from the failure to take such precautions. That it was a want of care to attempt to remove the cargo without either removing the entire hold covering, or making fast the strong-back, the evidence abundantly warranted the jury in finding. It is true the evidence shows that Petro, the foreman, had knowledge of the conditions, but it is also shown that he did not inform Andresen of them. Petro's negligence is not to be visited upon Andresen. It was the nondelegable duty of the master to make the place reasonably safe, and it is liable for a failure in the performance of that duty, however negligent its agent or servant, to whom it intrusted the duty, may have been in that regard.

[3] It is next objected that there was no evidence on which the jury could base a finding of damages. But we think the respondent proved this branch of her case in the only manner it could be proven. She showed the age of Andresen at the time of his death, his condition of health, his earning capacity, his character for industry and prudence, the amount of his average earnings per month, the amount of his earnings he contributed to the support of his family, and his expectancy of life was made known to the jury.

She also showed the condition in life of the beneficiaries for whom she was suing, their ages, and the degree of their dependency upon him. This, as we understand the rule, was sufficient to warrant the jury in returning substantial damages in her favor.

[4] The court instructed the jury as to Andresen's expectancy of life without the introduction in evidence of a mortality table, and error is urged because it did so. It may be doubted, we think, whether this question is open to the appellant; but, conceding it to be so open, we find no error in the court's action. The court takes judicial notice of the standard mortality tables (*Suell v. Jones*, 49 Wash. 582, 96 Pac. 4), and the court can properly inform the jury as to the expectancy of life of a given person, where the matter is pertinent to the inquiry before it, without taking evidence on the matter. The case cited also answers another objection the appellant makes in this connection, namely, that it was not shown that Andresen came within the class of risks to which such tables are applicable. But as we said in the cited case, whenever it becomes necessary to estimate the value of annuities, dower, curtesy, or damages for wrongful act, such tables may properly be considered. It is true that the effect of such tables as evidence is for the trier of the facts, and true also that such triers, in determining the life expectancy of any person, may take into consideration his vocation, occupation, and condition of health, both mentally and bodily, and may find that these considerations destroy the value of the tables as evidence, but these considerations only go to the weight of the tables as evidence; they are not inadmissible for such reason.

Finally, it is urged that certain of the instructions given by the court to the jury are erroneous, but objections on this score, possibly not because of the fault of counsel who are conducting the appeal, are not pre-

sented by the record in such a manner as to enable us to review them.

The judgment is affirmed.

MAIN, ASKREN, and HOLCOMB, JJ., concur.