[No. 23056. Department Two. September 2, 1931.]

JOHN W. IMBLER, *Respondent,* v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Appellant.*[1]

300

*Cannon, McKevitt & Fraser,* for appellant.
*Robertson & Smith,* for respondent.

BEELER, J.—The respondent, a section hand in appellant's employ, brought this action under the Federal Employer's Liability Act to recover damages for personal injuries which he sustained by reason of being struck on the face by a track wrench, while riding on one of the appellant's motor cars operated on its main railway line in the vicinity of Lamont, Washington. Respondent in his complaint charged that the appellant negligently failed to furnish him a safe place in which to work, in that the motor car on which he was riding was unequipped with a tool box, or an enclosure or fasteners so as to securely hold the tools and keep them from slipping and falling from the car; that appellant's foreman on the morning of the accident carelessly placed certain tools on the floor of the car and failed to fasten, secure or guard them so as to prevent them from falling, and ran the car at an excessive rate of speed over an uneven and rough stretch of track, with the result that the wrench slipped off of the car and was propelled or thrown upward and against his face with great force, from which he sustained the injuries complained of.

The appellant denied all allegations of negligence, and set up an affirmative defense in which it was alleged that the respondent assumed the risk of his employment. The cause was tried to the court and a jury, resulting in a verdict in favor of the respondent. At proper times during the trial, the appellant moved for

a nonsuit, for a directed verdict, for judgment n o. v., and for a new trial. These motions were denied, judgment entered on the verdict, and this appeal followed.

The first question presented for our consideration is whether respondent, as a matter of law, assumed the risk of injury. A review of the evidence is necessary to determine this question.

From the evidence, the jury were warranted in finding that, on the night of February 21, 1930, the appellant's foreman requested Imbler to return to work the next day. Accordingly, on the following morning the respondent reported for duty, and found that the foreman had removed the motor car, used in patrolling and inspecting the track and roadbed, from the shed or tool house to a point near the main line track. This car is approximately six feet long and four feet eight inches wide. Lengthwise through the center of the car is a seat box, or platform, about eighteen inches high from the floor of the car, which incases the motor. This platform is used by members of the crew as a seat box while riding on the car. There is an opening at or near the center of the platform through which a lever projects which is used in operating the car. Extending from the base of the seat box or platform to the right edge of the car, is a floor space about fourteen inches wide, also running lengthwise of the car. The foreman had placed a crow bar, a broom, an axe, and the wrench on this fourteen inch space at some time before they started to use the car on February 22. The wheels on the right-hand side of the car are guarded by semi-circular metal sheets about one foot long at the base, and extending upward to approximately the same height as the flanges of the wheels. Both ends of this fourteen-inch space as well as the right side were unguarded, except that portion thereof occupied by the semi-circular metal sheets.

The evidence further tended to establish that it was the duty of the foreman, and not that of the respondent, to place the tools on the work car; that Imbler took no part in placing the tools on the car; that it was the custom of railway companies in the Northwest to provide tool boxes or some method of securely fastening tools carried on motor cars similar to the one here used; that the foreman ordered the respondent to take a position on the platform or seat box behind the windshield and to keep a lookout for obstructions on the track and for oncoming trains; that the respondent was sitting with his legs alongside the platform, with his feet extending to within a few inches of the floor on which the tools were lying; that the top of his head or hat was approximately even with the top of the windshield; that the distance, vertically, from the place where the tools were lying to the point on his face where he was struck was approximately five feet; that the foreman sat on the opposite side of the platform and operated the motor car.

In this position they ran the car a distance of some three or four miles east of Lamont, then changed the windshield to the other end of the car and started back over the same stretch of track; that about two miles west of Lamont, the track extends through a rather precipitous rock cut with a ditch on either side thereof; that the track at this point was rough and uneven owing to the frozen condition of the roadbed. The respondent testified that, in going over this portion of the track, he felt the motor car jerk and that he glanced back and while so doing was struck by the track wrench. This wrench is forty-two inches long, and weighs from thirteen to fourteen pounds, and in some unknown manner was propelled or thrown through the air a distance of possibly five or six feet, striking the respondent.

The respondent admitted that he observed the tools at the time he got on the motor car, and at the time he and the foreman changed the windshield before starting back to Lamont, but that while the car was running he gave no attention thereto, his attention being directed to the track ahead in order to determine whether it was clear of obstructions and approaching trains.

■ ■ The question whether the respondent assumed the risk of injury, as a matter of law, is governed by the decisions of the United States courts. At common law, as a general rule, the servant assumed the ordinary risks and hazards incident to his employment, which were apparent and obvious to one in the exercise of ordinary care. Unusual risks, or risks created by the negligence of the employer or his agents, are not assumed by the employee unless actually known to and comprehended by him, or so open and obvious as to raise a presumption of knowledge. The rule is clearly stated by the supreme court of the United States in the case of *Chesapeake & Ohio Ry. Co. v. De Atley,* 241 U. S. 310:

"According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

See, also, *Chesapeake & Ohio Ry. Co. v. Proffitt,* 241 U. S. 462; *Morgan v. Ogden Union Ry. & Depot Co.,* 294 Pac. (Utah) 541; *Covington v. Atlantic Coast Line R. Co.,* 158 S. C. 194, 155 S. E. 438; *Port Angeles*

*Western R. Co. v. Tomas* (C. C. A., 9th Circuit), 36 Fed. (2d) 210; *Howland v. Standard Milling & Logging Co.,* 50 Wash. 34, 96 Pac. 686; *Blair v. Spokane,* 66 Wash. 399, 119 Pac. 839; *Arneson v. Grant Smith & Co.,* 120 Wash. 98, 206 Pac. 960; *Roalsen v. Oregon Stevedoring Co.,* 147 Wash. 672, 267 Pac. 433.

If we correctly interpret the argument advanced by the appellant, it is that the Federal courts have departed from the rule or doctrine as laid down in the earlier cases relating to the defense of assumption of risk. But we have held to the contrary.

"Under the Federal Employer's Liability Act, the defenses of contributory negligence, except in reduction of damages, and of negligence of fellow servants, have been abolished. The act abolishes the defense of assumed risk only when the accident is caused by the employer's violation of certain safety acts relating to carriers and have no relevancy to stevedores. In all other respects, the defense of assumed risk is left exactly as at common law." *McGinn v. North Coast Stevedoring Co.,* 149 Wash. 1, 270 Pac. 113.

In the more recent case of *Cross v. Spokane, Portland & Seattle R. Co.,* 158 Wash. 428, 291 Pac. 336, we reviewed the Federal authorities and concluded that those courts had not departed from the rule.

In the present case, it was the duty of appellant's foreman to load the tools on the work car in a safe and secure manner. The respondent had the right to assume that this had been done, and he was under no obligation to investigate and ascertain whether the foreman had discharged this duty. Whether he could have observed the manner in which the tools were loaded and comprehended the danger therefrom while the car was running at twenty miles an hour, is beside the question. His place was on top of the work car, and his duty was to keep his eyes fixed on the track in front of him. Under similar circumstances, it has

been held in a number of well considered cases, arising under the Federal Employer's Liability Act, that the doctrine of assumed risk did not apply. In the cases we now cite, the facts and circumstances out of which the respective accidents arose are very similar to the facts in the case here under consideration; they all deal with tools falling from a railway motor car similar to the one in the present case and rebounding and striking the complaining party.

In the case of *Clift v. St. Louis-San Francisco Ry. Co.*, 320 Mo. 791, 9 S. W. (2d) 972, the supreme court of Missouri held that it was negligence on the part of a master to place a claw bar on top of a heap of other tools and rope on a motor car, and that whether a bridge carpenter who was riding on the car assumed the risk of being struck was a question for the jury. In the opinion it was said:

"The evidence tended to show that the claw bar suddenly slid from the top of the tray on the left-hand side, and, after hitting a tie, rebounded, and first struck the man sitting immediately back of plaintiff and then struck plaintiff and threw him from the car. Plaintiff stated that he was not told to watch the tools, but his instructions were to watch for the extra train that was expected on that track. . . . Plaintiff stated that his attention was directed to the track, and that if he had looked he could readily have noticed and observed the tools and claw bar, but that the duty to watch the tools was placed upon others, and that he did not notice or see the tools. . . . The claw bar, which was the cause of the accident, was deposited on or near the top of the heap, on or among ropes, and above the sides and ends of the tray. In this position it was likely and liable to slide and fall from the front of the car. . . .

"We do not think that plaintiff may be charged, as a matter of law, with knowledge and appreciation of the condition of the tools on the car, or that the danger was so obvious that an ordinarily prudent person

would have observed and appreciated it. He was entitled to rely on the prudent and careful loading of the tools by the defendant and its vice-principal, whose duty it was to see that the tools were properly loaded. Under the evidence he could not be charged, as a matter of law, with the duty of inspection, nor could he be required to anticipate that the motor car was improperly loaded. . . . The issue of whether plaintiff assumed the risk was, under the facts and circumstances in this case, for the jury.''

In *Hook v. Atchison, T. & S. F. Ry. Co.*, 116 Kan. 556, 227 Pac. 531, a lining bar fell from a motor car in such a manner that one end struck a tie, which caused the other end to fly up and strike the plaintiff in the back, throwing him from the motor car. It was there said:

''The defendant argues that any danger from overloading or improper loading of the car was open to common observation and was as readily to be seen and appreciated by him as by the company, and therefore that the defense of assumed risk was established. . . . In order for the defense of assumed risk to be established it was not enough that the plaintiff knew of the physical facts as they existed; he must have known and appreciated the danger. . . . (*Seaboard Air Line v. Horton*, 233 U. S. 492) [34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C 1, Ann. Cas. 1915B 475]. We do not think that it can be said as a matter of law that the plaintiff appreciated or was under an obligation to appreciate the danger, or that the danger was not one that the defendant was bound to take into account and provide against.''

In *Wasioto & B. M. R. Co. v. Hall*, 167 Ky. 819, 181 S. W. 629, an aligning bar, deposited on a pile of overalls and rain coats about eighteen inches high, slipped from the car and struck a tie, one end of which struck the plaintiff and threw him from the car. The court there said:

"Plaintiff's evidence shows that it was the duty of the defendant, through its foreman, to see that the hand car was properly loaded. Therefore, if the car was improperly loaded the risk, in this instance, was not one ordinarily incident to the service in which plaintiff was engaged, but one growing out of the negligence of the master, and unless plaintiff knew that the car was improperly loaded and appreciated the danger therefrom, or the improper loading and the danger therefrom was so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them plaintiff did not assume the risk. Applying these principles to the facts, we find that plaintiff did not assist in loading the hand car. On the contrary, he got on the car just as it was moving. He immediately began to assist in its operation. While it is doubtless true that he could have seen the aligning bar if his attention had been directed to the matter, yet he says that because he was engaged in operating the lever his mind was fixed on that, and he did not observe the improper position of the aligning bar until he saw it slide towards him and it was then too late to escape injury. Considering his testimony in the light of the fact that he was not charged with the duty of inspection and was not required to anticipate the improper loading of the car, and of the further fact that he was engaged in operating the car and his attention was fixed thereon, we cannot say, as a matter of law, that the improper position of the aligning bar and the danger therefrom were either known and appreciated by the plaintiff or were so obvious that an ordinarily prudent person, situated as he was, would have observed and appreciated them; and that, therefore, he assumed the risk of injury."

True, respondent had been employed as a section hand for approximately six years, and had ridden on this or similar cars nearly each day while in appellant's employ. True, the respondent testified that he knew that small tools had jarred off of the motor car on a few prior occasions. But no tool weighing thirteen or fourteen pounds had ever been known to drop off,

much less rebound in a manner such as the wrench did on this occasion. While the respondent admitted that, on several occasions during the five or six years, he had assisted in placing tools on the work car, he did not assist on the morning of the accident; nor was it his duty to do so.

There was evidence tending to establish that the foreman had placed the tools on the car in a negligent manner, and that this negligence was the proximate cause of respondent's injuries. The respondent was stationed on the top of the car as a lookout. While he might have observed the location of the tools at the time he first boarded the car, and when he helped to change the windshield, whether he appreciated and comprehended their insecurity as the car gained momentum was a question of fact to be determined by the jury, especially since his duty was to keep his attention on the track ahead. Under all of the circumstances, we would not be justified in holding, as a matter of law, that he assumed the risk of injury from being struck by this tool.

Error is assigned in the refusal of the court to give certain instructions submitted by the appellant, and in giving others in lieu thereof to the jury. We find it unnecessary to analyze and discuss them separately. The instructions as given defined the law applicable to the case accurately and fairly to both parties; while those that were refused consisted in part of duplications of what in effect were given, or else they were not correct expositions of the law applicable to the case.

Error is assigned on the admission in evidence of the testimony of respondent's witness Raperonis, and in rejecting the testimony of the appellant's witness Wright. This assignment needs no special discussion. The ruling of the lower court was clearly correct.

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, C. J., MILLARD, BEALS, and MAIN, JJ., concur.

