[No. 27081. Department One. August 3, 1938.]

CLEO McGRADY, *as Administratrix, Respondent*, v.
PETER D. BRINK *et al., Appellants.*[1]

[1]Reported in 81 P. (2d) 800.

*Cannon, McKevitt & Fraser* (*Joseph L. Thomas,* of counsel), and *Roy R. Cahill,* for appellants.

*C. A. McCabe* (*Louis K. Poyntz,* of counsel), for respondent.

Main, J.—This action was brought to recover damages for wrongful death.

In the complaint, there were two causes of action stated; one was the loss sustained by the widow of the deceased, and the other was for his pain and suffering. The cause was tried to a court and a jury, and resulted in a verdict of nine thousand dollars upon the first cause of action and one thousand dollars upon the second. The defendants moved for judgment notwithstanding the verdict and, in the alternative, for a new trial, both of which motions were overruled; and from the judgment entered upon the verdict, they appeal.

The facts essential to be stated are these: Victor McGrady and his wife lived on a ranch in Garfield county, some distance from the town of Pomeroy. The appellants are physicians and surgeons, Dr. Brink practicing in Pomeroy and Dr. Lyman in Walla Walla.

Early in the morning of March 7, 1935, McGrady was taken ill, and Dr. Brink was called. At that time, McGrady was vomiting blood. The doctor caused him to be sent to a hospital in Walla Walla, and he was given a blood transfusion. March 16, 1935, his condition had improved to such an extent that an operation was decided upon, and Dr. Lyman was called in to perform it. The patient was then suffering from what is called a "marginal ulcer" of the stomach. Four years previously he had been operated upon for stomach ulcers, but had recovered from that operation and, ap-

parently, was well and strong for a period of about two years, when again his stomach began to trouble him; gradually growing worse until the time above mentioned.

After the operation, the patient made satisfactory improvement, and there appeared to be no reason why he would not continue to convalesce until he could be removed from the hospital. About 9:30 p. m., March 20th, he was taken with a severe pain in the "mid epigastrium." From this time, he declined rapidly and died at about 5:20 o'clock on the morning of March 22, 1935.

The body was taken to Pomeroy by an undertaker, and, while the mortician was in the process of embalming it, he discovered in the abdomen a hemostat, which is a scissors-like clamp for the tying off of arteries that have been cut, to arrest the flow of blood, and has much the appearance of a pair of ordinary scissors about five inches in length. In the record, the instrument is referred to as a forceps. When it was discovered in the body of the deceased, it was attached to some of the tissue.

Subsequently, Cleo McGrady, the widow, was appointed administratrix of her deceased husband's estate and brought this action against the appellants for, as above stated, wrongful death.

The first question to be determined is whether there was sufficient evidence to take the case to the jury. Upon the question as to whether the forceps were found in the body of the deceased, the evidence is conflicting, and the jury having found against the appellants, their verdict must be here accepted as having found the fact as to the forceps. It is not claimed that the leaving of the forceps in the abdomen at the time of the operation was not negligence, but the contention is that the evidence fails to show that that negligence proximately

caused the change in the patient's condition and his subsequent death.

In determining the question of the sufficiency of the evidence, of course, if there is any substantial evidence or reasonable inference from such evidence from which the jury could conclude that the leaving of the forceps in the abdomen of the patient did cause his change of condition and result in his subsequent death, the jury's verdict is controlling. *Boyd v. Cole,* 189 Wash. 81, 63 P. (2d) 931; *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993.

We must then look to the evidence offered by the respondent and determine whether that evidence made a case for the jury. A doctor called by the respondent testified as an expert witness to the effect that, if the forceps, while in the body, were attached to the tissue, it would die, with the result that there would be "deleterious toxins arise from that tissue, and those toxins would be absorbed into the blood stream;" that the forceps, being in the abdomen, would probably cause pressure upon the bowels which would cause the pain and hiccoughing; and also stated that, "in my opinion, I am inclined to think this hemostat would naturally in the ordinary course of events cause death; I think that it probably would."

Mention is made that this witness also testified that "I don't know what the cause of death was." But that does not destroy the effect of his other testimony. Even if it be assumed that the testimony of the witness was inconsistent in certain particulars, the question would still be one for the jury, because the respondent was entitled to that version of the evidence which was most favorable to her. 64 C. J. 457; *Rindge Building v. United Automobile Ins. Co.,* 229 Mich. 555, 201 N. W. 449; *Harris v. Saunders,* 108 Wash. 195, 182 Pac. 949.

However, we see no inconsistency in the testimony of this witness, because no one knew what caused the death of Mr. McGrady. The appellants and the expert witnesses called by them did not testify that they knew. Speaking generally, they attributed it to one of three causes. They invoke the rule that, where the evidence goes no further than to show that death may have resulted from one of several causes, for one or more of which there is liability, and for another or others of which there is none, then the jury cannot speculate or conjecture and return a verdict as for a cause for which there is liability. *Hill v. Great Northern Life Ins. Co.*, 186 Wash. 167, 57 P. (2d) 405; *Hessler v. Moore*, 188 Wash. 80, 61 P. (2d) 1001.

That rule is not applicable to the facts in this case, because there is no showing in the evidence offered by the respondent that the death was caused by one of several causes. In determining whether the question was for the jury, the appellants' evidence, that the death was the result of one of two or three causes, cannot be taken into consideration. The question upon that evidence, as against that offered by the respondent, was for the jury.

██ It was not incumbent upon the respondent to establish material facts essential to a recovery beyond a reasonable doubt. As stated in *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135 Pac. 804:

"A plaintiff in this character of case is not obligated to establish the material facts essential to a recovery beyond a reasonable doubt. Such a rule would amount to a denial of justice. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable."

In the case now before us, the jury had a right to find from the evidence offered by the respondent that it was more probable that the sudden change in the condition of Mr. McGrady and his subsequent death were proximately caused by the leaving of the forceps in his abdomen, rather than from any other cause. The court did not err in denying the motion for judgment notwithstanding the verdict.

In support of the motion for new trial, the appellants claim that it was error to admit in evidence, over their objection, the state mortality tables, because, as they say,

"Such a table is not proper evidence in a case of this character where no earning capacity is shown and where the condition of the decedent is such that at the time of the injury complained of he had no life expectancy."

Mortality tables are admissible and may properly be considered whenever it becomes necessary "to estimate the value of annuities, dower, curtesy, or damages for wrongful act. . . ." The weight to be given to them in a particular case is for the jury, under proper instructions. *Suell v. Jones,* 49 Wash. 582, 96 Pac. 4; *Roalsen v. Oregon Stevedoring Co.,* 147 Wash. 672, 267 Pac. 433.

In this case, the court instructed the jury that, if they found the death of Mr. McGrady was caused by the negligent act charged against the appellants, they should determine the probable period he would have lived had not the negligent act occurred, by considering all of the evidence in the case bearing upon the question. In the earlier part of the instruction, the mortality table was referred to and what it was intended to show was explained to the jury. Had the appellants desired the jury to be instructed more definitely as to the life expectancy, they should have made

a request for such an instruction. *Heath v. Stephens,* 144 Wash. 440, 258 Pac. 321.

■ Complaint is also made of another instruction which stated to the jury that, in determining the damage to which the respondent was entitled, if they found a verdict for her, they could take into consideration love and affection, if any, that existed between the parties, what would have been the probable condition of the health of Mr. McGrady had he lived, his expectancy of life, his probable earning power, and the probable amount that he would have expended upon respondent had not the negligence of the defendants intervened to cause his death. This instruction is supported by the case of *Heath v. Stephens,* 144 Wash. 440, 258 Pac. 321, and is, in substance and effect, the equivalent of the language used in the opinion in that case.

The objections made to one or two other instructions, we think, have been answered by what has already been said, and specific reference to them is not here necessary.

The judgment will be affirmed.

STEINERT, C. J., HOLCOMB, GERAGHTY, and SIMPSON, JJ., concur.