[No. 38574.    Department Two.    December 22, 1966.]

NELLIE BROWNING, *Respondent*, v. JOHN H. WARD *et al.,*
*Appellants.**

*Reported in 422 P.2d 12.

46

*Lycette, Diamond & Sylvester* and *Earle W. Zinn*, for appellants.

*Frank J. Woody* (of *Kahin, Horswill, Keller, Rohrback, Waldo & Moren*), for respondent.

BARNETT, J.†—Plaintiff brought this action against the defendants for personal injuries. She sustained these injuries as a result of a fall while employed as a housekeeper at the defendants' home. The jury returned a verdict in favor of the plaintiff for $5,000. This is an appeal from a judgment entered upon the verdict.

The following is a brief statement of the pertinent facts evaluated in the light most favorable to the plaintiff.

At the time the plaintiff fell and was injured she was employed as a housekeeper by the defendants, Mr. and Mrs. Ward, and she was working within the course and scope of her employment. She had been working almost every Monday as the defendants' housekeeper for a period of a few months less than two years. During this time she had established a routine for doing her work. The plaintiff would go to work at the defendants' home about 7:15 a.m. Monday mornings; she would do some work in the bottom level of the house and then go upstairs to the second level to get a vacuum cleaner. This vacuum cleaner was an Electrolux. It is the cylindrical tank type which has a detachable flexi-

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ble suction hose, two metal pipes, and a detachable electrical connection cord. The plaintiff would usually take the vacuum tank, the electrical cord, and the hose with the pipe attachments, in one trip down the stairs to the bottom level of the house in order to clean that area.

The stairway was of ordinary width, it had walls on both sides all the way to the bottom and a door at the top of the staircase.

On the day of her accident the plaintiff proceeded as usual; she began her work in the bottom level of the defendants' house, then she went up the stairs to get the vacuum cleaner. The plaintiff gathered up the vacuum tank and the hose and pipe attachments and started to return to the downstairs. However, sometime before she reached the stairs she discovered that the electrical cord was not with the vacuum cleaner as was usual. The plaintiff told Mrs. Ward that the electrical cord was missing, then started to go down the stairs with the load she had, which was manageable, as it had been at all times in the past. After the plaintiff had taken two steps down Mrs. Ward called out, saying that she had found the electrical cord. The plaintiff stopped on the steps and Mrs. Ward came to the staircase with the electrical cord. Mrs. Ward reached over the plaintiff's left shoulder with the coiled or looped cord and laid it across plaintiff's left forearm. The plaintiff could not grasp the cord in either hand. In her right hand and arm she carried the flexible hose and the two metal pipe attachments. She used both her right hand and arm to hold attachments so that she could get down the stairs. In her left hand plaintiff carried the vacuum tank by its handle. In carrying the tank by its handle her left forearm was in a horizontal position. Across this forearm the electrical cord was placed by Mrs. Ward, not fastened or secured in any way.

After placing the electrical cord across the plaintiff's forearm Mrs. Ward said, "Okay, you are ready to go now" or words to that effect, then she left the stairs, shutting the door at the top of the steps behind her.

After Mrs. Ward's comment, the plaintiff started down the steps again. The motion of the plaintiff descending the steps caused the electrical cord to slip off her forearm simultaneously with her taking a step down. The plaintiff slipped on the cord, lost her balance and fell.

The plaintiff fell backwards, coming down on the vacuum tank in the area of her lower torso, then she slid down to the steps below. This fall resulted in severe injuries to the plaintiff's spine and legs, causing her to be hospitalized on several occasions.

The defendants make four assignments of error. Three of the assignments of error are interwoven and relate to the allegations of primary negligence by the defendants and contributory negligence by the plaintiff.

The defendants first contend that the plaintiff's evidence was insufficient to justify the trial court in submitting the case to the jury. Secondly, they contend that if they were negligent, the plaintiff was contributorily negligent as a matter of law, hence the court erred in submitting the case to the jury.

■■ By appropriate motions the defendants' position was submitted to the trial court during the course of the trial. In evaluating the sufficiency of the evidence the trial court had to keep in mind and apply the rules we have enunciated in a myriad of cases, that the evidence of the non-moving party must be considered in the light most favorable to him, no element of discretion is involved, and that such motions can be granted only when it can be held as a matter of law that there is no evidence or reasonable inference therefrom to sustain a jury verdict for the non-moving party. *Schwab v. Department of Labor & Indus.*, 69 Wn.2d 111, 417 P.2d 613 (1966); *Boley v. Larson*, 62 Wn.2d 959, 385 P.2d 326 (1963); *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 381 P.2d 605 (1963). In addition, the trial court must apply the rule that only in the clearest of cases is the court justified in determining that contributory negligence exists as a matter of law, and that as a condition precedent for such a determination is a conclusion that reasonable

minds could not have differed in their interpretation of the factual pattern. *Boley v. Larson, supra.*

The defendants do not argue that in the circumstances of this case the defendant-wife did not owe a duty of reasonable care to the plaintiff servant. They merely urge that the facts do not justify a finding of negligence on the part of the defendant-wife and that reasonable minds could not differ as to this conclusion.

We disagree. Reasonable minds could reach different opinions as to whether the defendant-wife created a condition of potential danger to the plaintiff by placing the electrical cord in an unsecured looped fashion upon the plaintiff's already encumbered left arm while she was in the process of descending the stairs and whether or not the probability of harm to the plaintiff was reasonably foreseeable. Therefore, we conclude that the ruling of the trial court in submitting the question of the defendants' primary negligence to the jury was proper.

■ We turn now to the question of the plaintiff's contributory negligence. Preliminarily, we will set out some considerations that are important to the disposition of this question. First of all, the trial court had a duty to be mindful of the relationship of the parties, *viz.*, the plaintiff was employed as a domestic servant by the defendants. Secondly, a fundamental principle pertinent to the court's consideration of the sufficiency of the evidence is that a master and servant are not altogether upon a footing of equality. *Jancko v. West Coast Mfg. & Inv. Co.*, 34 Wash. 556, 76 Pac. 78 (1904). Finally, when considering the sufficiency of the evidence with reference to the servant's contributory negligence the trial court must apply the rule that a master may not assert that an injured employee is barred from recovery merely because he was aware or should have known of the dangerous condition negligently created or maintained by the master. However, if the servant's voluntary exposure to the risk is unreasonable under the circumstances, he will be barred from recovery because of his contributory negligence. *Siragusa v. Swedish Hosp.*, 60 Wn.2d 310, 373 P.2d 767 (1962).

50

The defendants argue that if the defendant-wife was negligent it must follow that the plaintiff was also negligent since the evidence shows that the plaintiff's knowledge of the circumstances was equal to or surpassed that of the defendant-wife. This argument flies in the face of *Siragusa, supra,* hence it is untenable.

The crucial question is not whether the plaintiff's equal or superior knowledge would mean she was contributorily negligent, but whether reasonable minds would differ as to whether or not the plaintiff's conduct was unreasonable in the circumstances. In this case we have a servant descending the stairs, both of her hands are encumbered with the vacuum cleaner and its attachments. The defendant-wife, without invitation on the part of the plaintiff, thrusts this electrical cord upon the plaintiff. In addition, the defendant-wife stated something to the effect, "Okay, you are ready to go now," which the plaintiff understood to mean that she was to continue going down the stairs and finish her work. The defendant-wife then closed the door to the stairs behind her.

It is to be noted that from the evidence the jury was entitled to consider the plaintiff to have been given at least an implied direction, however mild, to continue down the stairs.

In the situation the plaintiff found herself, on the stairs with both hands full, the electrical cord unsecurely draped over her arm and the door closed behind her, there is room for reasonable minds to differ as to whether it was unreasonable for the plaintiff to continue down the stairs, especially in view of the statement made by the defendant-wife, "Okay, you are ready to go now." This proposition was well stated in *Hull v. Davenport,* 93 Wash. 16, 24, 159 Pac. 1072 (1916):

> Whenever, therefore, there is room for reasonable difference of opinion as to whether the servant so appreciated the danger as to make it reckless to proceed, the question is one for the jury, especially where the servant is proceeding under an order of any kind, however communicated.

The suggestion by the defendants that the plaintiff could have protected herself by choosing alternative courses of action presents matters for jury consideration in determining whether the plaintiff acted reasonably in the circumstances.

We are convinced that reasonable minds could differ in their interpretation of the instant fact pattern; therefore, the trial court was correct in submitting the question of the plaintiff's contributory negligence to the jury.

The fourth assignment of error relates to the failure of the trial court to strike the testimony of Dr. Richard Gross, the plaintiff's expert medical witness. It was argued that his testimony establishes no more than the possibility of a ruptured disc, therefore, the testimony does not come within the ambit of *Glazer v. Adams*, 64 Wn.2d 144, 148, 391 P.2d 195 (1964) and cases cited therein, that

> " . . . medical testimony must at least be that the injury 'probably' or 'more likely than not' caused the subsequent condition, rather than that the accident or injury 'might have,' 'could have,' or 'possibly did' cause the subsequent condition. . . ."

The witness was subject to a lengthy direct and cross examination. There may be apparent inconsistencies in his testimony, but it satisfies the requirement of reasonable medical certainty. Although a detailed statement of his testimony would unduly prolong this opinion, we set out the following questions and answers as an example of his testimony on causation:

> Q. What was your diagnosis? A. At the time of the hospitalization, I assumed that she had a minimally ruptured disc, . . . . Q. Well, you say that you assumed. Was this based upon reasonable medical certainty? A. Yes.

Of prime importance in dealing with the fourth assignment of error is the general rule that "The credibility and the weight of the testimony are questions for the jury, notwithstanding there are contradictions or inconsistencies in the testimony of a particular witness." 88 C.J.S. *Trial* §

214 (1955). See also *Briggs v. United Fruit & Produce, Inc.*, 11 Wn.2d 466, 119 P.2d 687 (1941).

This rule has been applied with reference to expert medical testimony. In *McGrady v. Brink*, 195 Wash. 626, 629, 81 P.2d 800 (1938), a medical witness had testified, "I don't know what the cause of death was." He also testified, "in my opinion, I am inclined to think this hemostat would naturally in the ordinary course of events cause death; I think that it probably would." This court then stated:

> Mention is made that this witness also testified that "I don't know what the cause of death was." But that does not destroy the effect of his other testimony. Even if it be assumed that the testimony of the witness was inconsistent in certain particulars, the question would still be one for the jury, because the respondent was entitled to that version of the evidence which was most favorable to her.

It was within the province of the jury to reconcile inconsistencies, if any, in the testimony of Dr. Gross. They evidently believed him when he stated his answer was "based upon reasonable medical certainty." We hasten to add that there are other instances in Dr. Gross' testimony which satisfy the requirements as to reasonable medical certainty.

■ The second prong of the defendants' fourth assignment of error relates to Dr. Gross' testimony as to the surgical procedure involved in repairing a ruptured disc. It appears that on cross-examination defendants' counsel brought out that the only way to demonstrate with 100 per cent accuracy that a patient has a ruptured disc is to do surgery to inspect the disc and in the instant case no surgery had been done. This would affect the weight of the witness's testimony on diagnosis. Dr. Gross was then permitted to testify as to the severity of surgery as a diagnostic tool. The defendants, having opened the door as to the use of surgery as a diagnostic technique, no error was committed by the trial court in admitting the above-described testimony of Dr. Gross.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.