[No. 43164.  En Banc.  February 19, 1976.]

IVAN'S TIRE SERVICE STORE, INC., *Petitioner*, v. GOODYEAR TIRE & RUBBER COMPANY, ET AL, *Respondents.*

*Leavy, Taber, Schultz & Bergdahl,* by *John G. Schultz* and *Crane Bergdahl,* for petitioner.

*MacGillivray, Jones, Clarke, Schiffner & Johnson,* by *Paul F. Schiffner* and *Henry E. Stiles II, Bogle & Gates, Robert W. Graham,* and *Ronald T. Schaps,* for respondents.

UTTER, J.—An action was brought by Ivan's Tire Service Store, Inc., against the Goodyear Tire & Rubber Company for damages. Goodyear cross claimed against Ivan's for the unpaid value of merchandise it had delivered. Ivan's action was premised on alleged violations by Goodyear of the Unfair Practices Act, RCW 19.90, and the Consumer Protection Act, RCW 19.86. A jury verdict was entered in

favor of Ivan's for $223,682.09 and for Goodyear on its cross claim for $37,782.09. Both parties appealed and the Court of Appeals in 10 Wn. App. 110, 517 P.2d 229 (1973), concluded there was insufficient evidence to justify submission to the jury of the issues relating to violations under the Unfair Practices Act, RCW 19.90. It did find there was sufficient evidence to justify submission to a jury of a possible violation of RCW 19.86.

We adopt the Court of Appeals opinion and the reasoning stated therein. There is an additional reason, in our opinion, why the trial court incorrectly instructed in the language of RCW 19.90.040 in instructions Nos. 8 and 13, as set out in the Court of Appeals opinion at pages 114-15, footnotes 1 and 2. There, the court instructed in effect that a sale of tires by Goodyear to its local store at less than cost could have taken place.

RCW 19.90.040 does not support Ivan's argument inasmuch as a sale below cost is a condition precedent to the application of that statute. See *Martin v. Aleinikoff*, 63 Wn.2d 842, 389 P.2d 422 (1964). There is no "sale" by Goodyear to its Richland store. The record fails to disclose any difference in fact or law between Goodyear Tire & Rubber Company and its Richland facility. Its Richland store is not a subsidiary corporation and has no separate legal existence. See *Reines Distribs., Inc. v. Admiral Corp.*, 256 F. Supp. 581 (S.D.N.Y. 1966). The question of lack of exercise of dominion and control by Goodyear over its Richland store was never an issue in this case. *Cf. Brewer v. Uniroyal, Inc.*, 498 F.2d 973 (6th Cir. 1974). The only transactions of legal significance were, therefore, Goodyear sales to Ivan's Tire and Goodyear sales to commercial accounts and retailers in competition with Ivan's Tire. There has been no contention that these sales form the basis of any violation of RCW 19.90.

Ivan's also argues that Goodyear must sell its tires at retail with a sufficient markup to allow Ivan's, as an independent dealer in the same community, to compete and pay its reasonable cost of doing business. It is contended that

any lower retail pricing is a forbidden sale below cost within the meaning of RCW 19.90.020 and .040. The Court of Appeals correctly rejected this argument and noted, at page 118, that "cost" referred to in RCW 19.90 is Goodyear's cost of manufacturing, not Ivan's cost of sale.

■ The basis of Ivan's claimed right to a discount is its function as a dealer for Goodyear. This assertion is unsupported by the language of either RCW 19.90.020 or .040, the history of the Robinson-Patman Act, or the legislative history of this state dealing with price-fixing mechanisms. The Robinson-Patman Act, 15 U.S.C. § 13 (1970), does not prohibit or mention differences in price dependent on the distributional function of the buyer. When the Washington legislature passed our Unfair Practices Act, subsequent to the passage of the Robinson-Patman Act, it affirmed the right of a seller to grant or withhold functional discounts by expressly permitting them in RCW 19.90.020 and by restricting RCW 19.90.040 to sales below the seller's cost without provision for mandatory functional discounts.

This view is in harmony with the currently existing federal law. A legislative investigation dealing with dual distribution selling practices of manufacturers in the tire industry is reported in *Dual Distribution in the Automotive Industry-1959, Hearings Before a Subcomm. of the Select Comm. on Small Business, United States Senate* 86th Cong., 1st Sess. 135 (1959). At that hearing the chairman of the Federal Trade Commission stated:

> There is no legal requirement that a manufacturer must use an intermediary in the process of distributing to consumers goods that he produces or that if the manufacturer disposes of a part of his goods at wholesale he may not sell similar goods to the ultimate consumer in competition with his distributors or dealers, even though the manufacturer sells at lower prices than those at which the independent distributor or dealer may profitably sell.

No change in the interpretation of this law has been brought to our attention by counsel. Subsequent testimony at hearings on bills to require manufacturers to grant adequate functional discounts indicate the more extreme prac-

tice of selling to a wholesaler at the same price as sales to retailers and consumers was legal. *Functional Discounts: Hearings on H.R. 3465, H.R. 4151, and H.R. 4529 Before the Antitrust Subcomm. of the House Comm. on the Judiciary*, 87th Cong., 1st Sess., ser. 19, at 8 (1961).

Subsequent to the passage of RCW 19.90, the Unfair Practices Act, our legislature has not chosen to require any seller to add functional discounts to its "cost" or to consider them in sales prices. Neither the Unfair Cigarette Sales Act, RCW 19.91 (1957), the amendments to the Unfair Practices Act, RCW 19.90 (1959), or the adoption of the Consumer Protection Act in 1961 and its amendments in 1970 incorporate provisions for mandatory functional discounts or provisions designed to guarantee any purchaser a "reasonable" margin, including profit. The recent repeal of the voluntary Fair Trade Act, RCW 19.89 (Laws of 1975, ch. 55) indicates, if anything, an increasing hostility to price fixing mechanisms, rather than a desire to extend their application.

For these reasons, as well as those stated by the Court of Appeals, we affirm its reversal of the judgment in favor of Ivan's, order that Goodyear's judgment is modified to include interest from May 20, 1970, and remand Ivan's action for a new trial.

STAFFORD, C.J., and FINLEY, BRACHTENBACH, and HOROWITZ, JJ., concur.

WRIGHT, J. (dissenting)—I dissent.

Ivan's Tire Service Store, Inc. (plaintiff/petitioner herein) was incorporated early in 1965, and opened for business in Pasco. The store was not exclusively a Goodyear dealership. However, the sales of other lines never exceeded 5 to 10 percent. Sales were to commercial and wholesale accounts, and at retail.

The agreement between plaintiff and Goodyear Tire & Rubber Company (defendant/respondent herein) was signed February 4, 1965, and renewed March 26, 1970. A Goodyear redistribution agreement was signed January 3,

1968. Plaintiff was the only Goodyear dealer in the Tri-Cities (Pasco-Kennewick-Richland) area with a redistribution agreement, which authorized wholesale and commercial sales. The 1968 and 1970 agreements were in force at the times relevant to this litigation.

Defendant supplied plaintiff with a rather complicated price schedule. Customers were rated by the volume of purchases. The largest accounts were rated "AAA" and received the lowest prices. The price charged plaintiff was 10 percent below the "AAA" price. The medium quantity purchasers were rated "AA" and paid somewhat higher prices. The smaller wholesale and commercial accounts were rated "A". Another classification, "net" accounts, comprised purchasers who were governmental, municipal, and public entities. The prices to the net account customers were fixed by Goodyear, and plaintiff was allowed a 10 percent commission on such sales.

The business of plaintiff prospered in all of the years until 1970, in which year the defendant opened a company store in Richland. The gross sales for the partial year of 1965 were $95,000. The gross sales increased rapidly; in 1966 they were $123,000, in 1967 they were $154,711, in 1968 they were $283,238, and in 1969 they were $346,218. In 1970 defendant's store opened and plaintiff's sales dropped to $184,000. Thereafter, plaintiff corporation was dissolved and a successor corporation formed to sell a different brand of tires.

In 1970, while plaintiff and defendant were in competition, the defendant sold Goodyear tires to customers of plaintiff for the same price at which plaintiff could buy; that is, the "AAA" price less 10 percent. Sales to "AA" customers were frequently made at the "AAA" less 10 percent price.

Defendant had full information as to plaintiff's customers; who they were and the price paid by each as well as the volume of purchases by each. Defendant's territory sales manager, Mr. Jim Sizmore, had frequently accompanied plaintiff's outside salesman when calling on customers.

The district truck and farm tire sales manager for the Spokane district, Mr. Leonard Hider, also went with the salesman on many occasions to call upon large farm or truck accounts. In addition, plaintiff furnished to defendant lists of customers and copies of invoices in order to qualify for special discounts.

This action was instituted in the Superior Court and judgment upon a verdict in the sum of $223,682.09 was entered December 27, 1971. The matter proceeded through the Court of Appeals, Division Three, and was decided December 10, 1973. *Ivan's Tire Serv. Store, Inc. v. Goodyear Tire & Rubber Co.*, 10 Wn. App. 110, 517 P.2d 229 (1973). The decision of the Court of Appeals became final February 20, 1974, with denial of a petition for rehearing. A petition for review was considered by this court on April 25, 1974, and granted.

Defendant (appellant in the Court of Appeals) made 17 formal assignments of error. All of the assignments may be deemed to fall within a few general areas.

Certainly the most important issues would involve the applicability of RCW 19.90 (Unfair Practices Act) and RCW 19.86 (Consumer Protection Act), and several instructions relating to the said statutes.

Two subsections of RCW 19.90 are the primary sources of controversy. These are RCW 19.90.020 and RCW 19.90.040.

The first of these, RCW 19.90.020 was the subject of instruction No. 13, wherein the court, using the language of the statute, instructed as follows:

The laws of the State of Washington provide as follows:

"It shall be unlawful for any person, engaged in the production, manufacture, distribution or sale of any article or product of general use or consumption, with the intent to destroy the competition of any regular established dealer in such article or product, or prevent the competition of any person, who in good faith, intends and attempts to become such dealer, to discriminate between different sections of the same community, city, town or village in this state by selling or furnishing such article

or product at a lower price in one section than in another
. . .

> "The inhibition of this chapter against locality discrimination shall embrace any scheme of special rebates, collateral contracts or any device of any nature whereby such discrimination is, in substance or fact, *affected* in violation of the spirit and intent of this section: provided, however, that nothing in this section shall be construed to prohibit the meeting in good faith of a legal competitive price."

This section is broadly applicable, especially the application of the last paragraph above quoted. I believe the trial court was correct in determining that political boundaries are not the measure of what constituted the "same community" and that the Tri-City complex was one metropolitan marketing area and was, thus, within the definition of a community. The statute is discussed in *State v. Sears*, 4 Wn.2d 200, 103 P.2d 337 (1940). Plaintiff, however, has the duty to show evidence of discriminatory pricing between different sections of the same community to come under the terms of RCW 19.90.020. The term "pricing" can be given an expanded definition pursuant to the statutory mandate which states that:

> The inhibition of this chapter against locality discrimination shall embrace any scheme of special rebates, collateral contracts or any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this section:

I believe the discrimination in this case can be a price differential by Goodyear as between the company store and Ivan's Tire, rather than in the retail sales of the two stores in the community. Under this construction of the statute, the evidence is clear that the Goodyear company store received inventory at no cost, and that the company store served as a warehouse for Goodyear. Likewise, the evidence is clear that although many special terms and price discounts were available to Ivan's Tire, the company store was given substantially better treatment. This differential

in terms raised a jury issue as to whether that was forbidden discriminatory pricing in violation of RCW 19.90.020.

Appellants further except to the trial court's instructions Nos. 8 and 13.[1]

[1]Jury instruction No. 8:

"The manufacturer who personally advertises a trademark article thereby creating a substantial consumer demand is required to allow the dealer a certain margin of gross profit to compensate for the reasonable 'cost of doing business.' It is the policy of the law that the manufacturer must do everything he can to keep the dealer-agent protected from price competition, and must not only enforce his system against other dealers, but if he himself becomes a dealer must abide by the 'costs' as established for other dealers. A manufacturer is not permitted to unfairly compete with a dealer by lowering selling prices below 'cost.' "

Jury instruction No. 13:

"The laws of the State of Washington [RCW 19.90.020] provide as follows:

" 'It shall be unlawful for any person, engaged in the production, manufacture, distribution or sale of any article or product of general use or consumption, with the intent to destroy the competition of any regular established dealer in such article or product, or prevent the competition of any person, who in good faith, intends and attempts to become such dealer, to discriminate between different sections of the same community, city, town or village in this state by selling or furnishing such article or product at a lower price in one section than in another . . .

" 'The inhibition of this chapter against locality discrimination shall embrace any scheme of special rebates, collateral contracts or any device of any nature whereby such discrimination is, in substance or fact, affected in violation of the spirit and intent of this section: provided, however, that nothing in this section shall be construed to prohibit the meeting in good faith of a legal competitive price.'

"The laws of the State of Washington [RCW 19.90.010] define the following terms as follows:

" ' "Cost" has its usual meaning . . . as applied to distribution means the invoice costs or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by said distributor and vendor;'

" ' "Cost of doing business" or "overhead expense" means all costs of doing business incurred in the conduct of such business and must include without limitation the following items of expense: Labor (including salaries of executives and officers), rent, depreciation, selling costs, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising.'

"The laws of the State of Washington [RCW 19.90.040] further provide as follows:

" 'It shall be unlawful for any person engaged in business within

Plaintiff has the burden of showing defendant sold to plaintiff's competitors below cost. Cost is defined in RCW 19.90.010 as follows:

"Cost" has its usual meaning and in addition as applied to production includes the cost of raw materials, labor and all overhead expenses of the producer, and as applied to distribution means the invoice cost or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by said distributor and vendor;

"Cost of doing business" or "overhead expense" means all costs of doing business incurred in the conduct of such business and must include without limitation the following items of expense: Labor (including salaries of executives and officers), rent, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising;

Plaintiff adduced proof showing the only basis of profit on tires sold by Goodyear were discounts from invoice cost. This failed to show appellants included the cost of doing business as an item of cost, thereby violating the prohibition of RCW 19.90.040. It is unnecessary for plaintiff to show the per unit cost to him of tires eventually sold to plaintiff or plaintiff's competitors in order for plaintiff to come under RCW 19.90.040. Plaintiff need only show invoice cost and a sale at that figure which does not properly take into account the cost of doing business. Plaintiff has shown this and, therefore, instructions on RCW 19.90.040 were proper. There is testimony in the record that the only profit to the Goodyear company store was the discount from invoice

---

this state to sell any article or product at less than the cost thereof to such vendor, or give away any article or product, for the purpose of injuring competitors or destroying competition, or to use any article or product as a "loss leader" or in connection with any sale to make or give, or to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise, or to secretly extend to certain purchasers certain services or privileges not extended to all purchasers purchasing upon like terms and conditions, or to make or enter into any collateral contract or device of any nature, whereby a sale below cost is effected, to the injury of a competitor, and where the same destroys or tends to destroy competition.' "

cost. It was incumbent upon Goodyear to show it had actually met its cost of doing business by the retail prices received for those items which were sold in competition to plaintiff. Goodyear failed to do so and the issue, therefore, was properly submitted to the jury.

Extensive research has failed to disclose any case authority for extending the prohibitions of RCW 19.90.020 and RCW 19.90.040 to a situation identical or substantially similar to the instant case. An examination of the statute itself shows ample justification for deeming the matters involved herein to be within the prohibition.

The language of RCW 19.90.020 is extremely broad and covers "any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this section."

The language of RCW 19.90.040 is likewise broad and makes it unlawful

in connection with any sale to make or give, or to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise, or to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, or to make or enter into any collateral contract or device of any nature, whereby a sale below cost is effected, to the injury of a competitor, and where the same destroys or tends to destroy competition.

RCW 19.90.040 was clearly violated by the operations of the company store. The ability of the company store to have a stock of merchandise without any investment was definitely a special privilege not extended to other purchasers. Such a special privilege injured a competitor and tended to destroy competition.

There is nothing in RCW 19.90 limiting the application of that chapter to sales at retail. The language of the chapter, and especially the definitions, are broad enough to cover sales at wholesale as well as sales at retail. In that regard, attention is directed to RCW 19.90.070 (4) which mentions a sale by a manufacturer to a wholesaler. That section was

enacted as a part of chapter 221, Laws of 1939, the original source for the most of RCW 19.90. From that reference, it becomes obvious that the legislature intended chapter 221 of the Laws of 1939 to apply to sales at wholesale, and I conclude the transactions involved herein are covered by RCW 19.90.

Appellant further challenges the propriety of instructions under RCW 19.86 (Consumer Protection Act) which prohibits

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . .

RCW 19.86.020. The trial court's theory on the matter of RCW 19.86 was covered by instructions Nos. 12 and 20. No exception was taken to instruction No. 12. No assignment of error related to instruction No. 20. The matter was never properly before this court and should not be considered.

There may be and often are situations wherein both RCW 19.86 and RCW 19.90 are applicable. This matter is discussed in 3 Gonzaga L. Rev. 135, 151-52 (1968) in an article entitled "Unfair Competition and the Unfair Practices Act—Suggested Approaches." Subsection D relates to overlaps between the two acts. Therein it states:

Certain types of conduct may do violence to both consumer protection and unfair competition principles. When such is the case, the sanctions of both areas are applicable to the conduct in question, but this should not deprive each concern of its basic nature. Consumer protection is particularly concerned with the effects of the conduct on free choice in the market place. Unfair competition, by this comment's suggested approach, is concerned with tortious conduct by a businessman toward his competitors.

An example of conduct which may involve double sanctions is the use of "loss leaders." A loss leader is primarily an instrument of consumer deception, calculated to create a false image of savings. As such, this device is properly the subject of consumer protection laws which are directed against deceptive trade practices, rather than of rules dealing with the relationship be-

tween competing businessmen. But a loss leader may also result in the type of injury to competitors as will raise a cause of action in tort for unfair competition. The device, as defined, is inevitably destructive of the free market order in that it defrauds consumers of their free choice. It may also be intended to injure or destroy a particular competitor or group of competitors. As such, it would be tortious conduct toward those competitors within the target area who are injured. Of course, anti-competitive activities which do not constitute unfair competition are not immunized from the law by that fact. Such conduct could be within the province of consumer protection law if it has the effect of deceiving or coercing consumers.

(Footnotes omitted.)

With reference to the matter of use of the information gained as to plaintiff's customers, their identity, the size of their purchases, and prices and discounts to each, I agree with the trial court. That was unfair competition. It must be remembered, defendant's personnel accompanied plaintiff's outside salesman in calling on customers. Information was required from plaintiff in order to qualify for extra bonus and discount advantages.

It was admitted by defendant it was easier to sell Goodyear tires to businesses already using that brand. With knowledge of plaintiff's prices it was easier to undersell plaintiff.

In Restatement of Torts § 757, at 1-2 (1939), it is said in relevant part:

> One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if
>
> . . .
>
> (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him.

In Comment *b* under that section, at page 5 it is said:

> It [trade secret] may, however, relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates or other conces-

sions in a price list or catalogue, or a *list of specialized customers.*

(Italics ours.)

A case which is quite similar to the instant case upon its facts is *W. Walley, Inc. v. Saks & Co.,* 266 App. Div. 193, 41 N.Y.S.2d 739 (1943). In that case the court said at page 198: "This is not fair, just or ethical." A judgment for plaintiff was therein affirmed.

With reference to the issue of treble damages raised by plaintiff's cross-appeal, I agree with the trial court's refusal to grant treble damages. Treble damages are authorized for violations of RCW 19.86. RCW 19.90 contains no similar provision. The verdict did not show upon which basis the jury relied.

On the matter of damages, it convincingly appears that an error was made by the jury. The question sent to the court by the jury after it has retired to deliberate showed the jury was confused about how to treat the cross complaint. A revised verdict form was then sent to the jury. The resulting figures show, without doubt, that the jury *added* the amount of the cross complaint. The resulting figure was higher than can be justified. The amount of the cross complaint, for which amount a summary judgment had theretofore been granted, was $37,782.09. That amount should be subtracted from the highest amount for which evidence would support a verdict, which was $200,000.

The trial of this action lasted 9 days. Such a case is expensive to try, expensive to the parties and expensive to the public. While it may be urged that this calculation is speculation, it is actually very clear that the foregoing is exactly what was done. Considering the obvious clarity of the matter, in addition to the hardship of a retrial on the parties and on the taxpayers, it would be proper to correct this error in preference to ordering a new trial.

There was testimony that would have supported any verdict up to $200,000. Therefore, the result is well within the range of the evidence.

Mr. Harry N. Ivans testified the business was worth

$200,000 before the competition of defendant started, and that by the end of that year (December 31, 1970), "It was worth nothing. It was defunct." Such testimony is admissible. An objection to his testifying on the matter of value was overruled, and that ruling was not appealed. It is true, assignment of error No. 15 alleges, *inter alia*, that no substantial evidence supported the verdict. The argument on that issue discusses the credibility of the testimony of the accountant, and briefly, the credibility of the testimony of Mr. Ivans. The rule is well settled that the credibility of evidence is a matter for the jury. *Jankelson v. Cisel*, 3 Wn. App. 139, 473 P.2d 202 (1970); *Browning v. Ward*, 70 Wn.2d 45, 422 P.2d 12 (1966); *Curtin v. Clear Lake Lumber Co.*, 47 Wash. 260, 91 P. 956 (1907).

The verdict, after making the suggested correction, is well within the range of the testimony and, therefore, should not be disturbed. 5A C.J.S. *Appeal and Error* § 1651 (1958); *Eikenbary v. Calispel Light & Power Co.*, 132 Wash. 255, 231 P. 946 (1925); *Carlson v. P.F. Collier & Son Corp.*, 190 Wash. 301, 67 P.2d 842 (1937).

The judgment of the trial court should be affirmed as modified by subtracting the sum of $37,782.09 from $200,000, leaving a net verdict of $162,217.91 in favor of plaintiff.

ROSELLINI, HUNTER, and HAMILTON, JJ., concur with WRIGHT, J.

Rehearing by Supreme Court pending December 7, 1976.